## Owens v. Commonwealth.

(Decided February 27, 1920.)

## Appeal from Perry Circuit Court.

1. Criminal Law—Trial—Self-Defense—Instructions.—On a prosecution for malicious wounding with a deadly weapon with intent to kill, evidence considered and held that the court did not err in refusing to give an instruction on self-defense.

2. Criminal Law—Assault with Intent to Kill—Deadly Weapon—When Question for Court or Jury.—Where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly, within the meaning of the statute, is one of law, but where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the question is one of fact for the jury.

3. Criminal Law—Assault With-Intent to Kill—Deadly Weapon—Question for Jury.—Whether a rock about the size of a man's hand and weighing about a pound, used by the defendant in striking the prosecuting witness who was about thirty feet away, was a deadly weapon, was a question for the jury.

4. Criminal Law—Trial—Instructions.—An instruction that if the defendant "struck and wounded S with a rock, a deadly weapon," was erroneous in assuming that the rock was a deadly weapon.

H. C. EVERSOLE for appellant.

CHARLES I. DAWSON, Attorney General, and T. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Adam Owens, who was convicted of malicious wounding with intent to kill and given the maximum penalty, seeks a reversal of the judgment.

It appears that Owens struck John Spencer with a rock and crushed his skull. Spencer, who says that he was only thirteen years of age, testified as follows: Early Monday morning he was passing through appellant's yard. The Saturday before he had whipped appellant's son, who had called him a bad name. On reaching appellant's home, he asked appellant's son to go with him after some horses. The boy called to his mother that Spencer had whipped him when he was out with him before. Thereupon Mrs. Owens asked Spencer what he had whipped her son for. Spencer replied that her son had called him a bad name. Just then Owens ran

out and threw a rock and struck him on the side of the head. He never had a weapon of any kind, and was not endeavoring to hurt Owens at the time. Debby Williams, Owens' brother-in-law, testified that when Spencer came to the house of Adam Owens, all of the family were in bed except Mrs. Owens. Spencer walked up on the porch and said that he wanted Mrs. Owens' little boy to go with him after the horses. The little boy said, "No, mammy, I don't want to go. He whipped me Saturday." Mrs. Owens said, "When they are away from me they can whip you." Spencer spoke of whipping Mrs. Owens, whereupon Adam Owens said. "I don't reckon you would come in a man's house and whip his wife." Spencer called Adam Owens a bad name and said, "What have you got to say about it?" Adam Owens jumped out of the bed in his night clothes and went to the door. Thereupon Spencer turned and stepped down the road and again called Owens a bad name. Owens then got a rock and threw and hit the boy. At that time the boy was not doing anything and had no knife or gun of any kind. Rome Napier, who was the uncle of Spencer and the brother-in-law of Owens, testified that he came to Owens' house a few minutes after the difficulty. He found a rock which they said was the one that hit him. The rock had blood on it, and the man that weighed it said that it weighed a pound. The rock was about as long as his hand, with a kind of lump on one side. On cross-examination he stated there were other rocks there, and he did not know whether the rock he saw was the one that struck Spencer.

Adam Owens testified as follows: Spencer came through the yard Monday morning with a bridle on his shoulder. All the family were in bed except Mrs. Owens, who was making a fire in the stove. Spencer said, "Get up, Evalee, and go with me after the horse." The little boy said, "No, I ain't going with him. He whipped me Saturday evening." Mrs. Owens said, "Yes, that is the way they do when they get you away from me. They whip you and knock you any way they want to." Spencer said, "If you weren't a G— d— woman, I would come in and cut your heart out. Owens said, "No, you won't come into my house and treat my wife that way." Spencer replied, "Adam Owens, if you don't hush, I will come in that house and cut your G— d— heart out."

At the same time, Spencer called him a vile name. Owens said, "Don't you call me that." Owens walked to the door and Spencer opened his knife. Owens picked up a rock and threw and hit Spencer with it. A knife was exhibited to the witness, who stated that the knife was the one that Spencer had and his wife had picked up. On cross-examination witness testified as follows:

"Q. How long did you stay there after you knocked the boy down? A. About ten minutes. Q. What did you hit him for? A. I hit him because he called me that bad name and had the knife in his hand, coming on me with a knife. Q. Which one did you hit him for? A. I hit him more for calling me that bad name. Q. How far away was he at the time you threw that rock and struck that boy? A. He was down below the house. Q. About how many steps away from you? A. He was about nine or ten steps away. Q. You saw the knife? A. Yes. Q. You didn't hit him because he had the knife in his hand? A. I hit him because he called me that bad name. The court: Was he coming in the direction of you or what was he doing? A. He was standing still when he called me that. Q. Did he move any from where he first was after you got up till you hit him? A. No, sir. At the time I got up he was standing at the door. Q. And was he still at the door when you hit him? A. No, sir, he had stepped away from the door, moved down a little bit. Q. How far had he moved? A. About three steps from the door. Q. Where did you get the rock? A. At the upper side of the door. Q. And you was about nine or ten steps away from him when you hit him? A. Yes.'"

We find no merit in the contention that the court erred in not giving an instruction on self-defense. While Owens first stated that he hit the boy because he had called him a bad name and was coming on him with a knife, he subsequently admitted that Spencer was nine or ten steps away and was standing still, and that he struck Spencer not because he had a knife in his hand, but because he called him a bad name. Not only so, but the testimony of the other witnesses present shows that the boy had moved away from the house and was not attempting in any manner to injure Owens when the rock was thrown. It is therefore clear that Owens was in no danger, real or apparent, and therefore was not entitled to an instruction on self-defense.

It is next insisted that the court erred in not leaving to the jury the question whether the rock with which the accused struck the Spencer boy was a deadly weapon. The instruction complained of is as follows:

"If you shall believe from the evidence in this case beyond a reasonable doubt, that the defendant, Adam Owens in Perry county, Kentucky, and before the finding of the indictment herein, wilfully and feloniously and of his malice aforethought, and not in his necessary or reasonably apparent necessary self-defense, struck and wounded John Spencer with a rock, a deadly weapon with intention to kill him, from which striking and wounding as aforesaid, the said John Spencer died not thereby; then the defendant, Adam Owens, is guilty as charged in the indictment and you ought to so find and fix his punishment at confinement in the state penitentiary for a period of time not less than one year nor more than five years in your discretion, according to the proof"

The established rule on the subject is that where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly, within the meaning of the statute, is one of law, but where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the question is one of fact for the jury. Thus, in the case of Commonwealth v. Duncan, 91 Ky. 595, 16 S. W. 531, the defendant struck the prosecuting witness with a rock larger than a man's fist. The court said: "Whether in this instance the rock was large enough to produce death, and therefore a deadly weapon, should have been left to the jury, and the court erred in taking the question from them." The same rule was announced in Cosby v. Commonwealth, 115 Ky. 221, 72 S. W. 1089, where the striking was done with a club and rock, and in Woodson v. Commonwealth, 21 S. W. 584, where an iron poker was used. In Riggs v. Commonwealth, 33 S. W. 413, and in Smallwood v. Commonwealth, 33 S. W. 822, the question whether a pistol used in striking was a deadly weapon was held for the jury. In McWilliams v. Commonwealth, 35 S. W. 538, the prosecuting witness produced several small sized stones, and expressed the belief that one of them, which was about as large as a man's fist, was the rock with which the defendant struck

him. The defendant denied that that was the rock and claimed that he had used a smaller rock. The language of the instruction was, "assault, strike and wound James Corbin upon his head, with rocks, . . . deadly weapon or weapons." The court held that the instruction assumed that the rocks were deadly weapons, and that this question should have been left to the jury. In the present case, one witness stated that the rock was about the size of his hand, and there was hearsay evidence that it weighed a pound. When the defendant threw the rock, Spencer was about twenty-seven or thirty feet away. Under these circumstances, the question whether the rock was a deadly weapon was for the jury. The language of the instruction is, "struck and wounded John Spencer with a rock, a deadly weapon," thus assuming, as in the case of McWilliams v. Commonwealth, *supra*, that the rock was a deadly weapon. It follows that the instruction was erroneous.

On another trial the court will leave it to the jury to say whether the rock was a deadly weapon, and will instruct the jury in accordance with the rule laid down in Cosby v. Commonwealth, *supra*.

Judgment reversed and cause remanded for a new trial consistent with this opinion.