Ronnie MEADOWS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. CA–56–MR.

Court of Appeals of Kentucky.

May 13, 1977.

Jack Emory Farley, Public Defender, Com. of Ky., Larry H. Marshall, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Miles H. Franklin, Asst. Atty. Gen., Com. of Ky., Frankfort, J. Albert Jones, Commonwealth's Atty., 2nd Judicial District, Paducah, for appellee.

Before GANT, LESTER and PARK, JJ.

GANT, Judge.

Appellant was convicted of Burglary in the First Degree under *Ky.Rev.Stat.* 511.-020. This appeal was taken alleging two errors; the first was that evidence of other crimes was admitted at the trial and, second, that the conviction, if any, should have been of Third Degree Burglary rather than First Degree Burglary.

The particular crime charged in this case resulted from a break-in at a dwelling house, a house trailer, which was unoccupied at the time, at which the Appellant stole a shotgun and several shells, together with certain other property. During the trial, in order to prove the possession of the shotgun which was later seen by a witness, Charles Grief, the Commonwealth Attorney asked Mr. Grief if he had seen the Appellant before this trial, apparently intending to elicit the answer that he had seen the Appellant in his home when he was holding the gun on him, and Mr. Grief answered that he had seen him "at the murder trial." Objection was made to this reference and the trial court admonished the prosecutor, out of the hearing of the jury, that there should be no further evidence concerning the murder.

Subsequently, in questioning the witness Grief concerning a lunch box which was left at his home, the prosecutor asked the witness if he had seen the lunch box before, apparently intending to prove that it had been found at his house, to which the witness answered that he had seen the lunch box "when they carried my wife out of the house." Objection was made to this statement and on both of these occasions a mistrial was requested but the court overruled the motion and admonished the jury not to consider the statements.

In isolation, these two statements might have been some cause for concern to this Court in considering the case. However, in view of the total evidence, if they were erroneous at all they were certainly harmless. The Supreme Court of the United States has stated:

> In reviewing criminal cases, it is particularly important for appellate courts to relive the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. Frankfurter, J., concurring in *Johnson v. United States,* 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704, 714 (1943).

We can hardly concur with the allegation of the Appellant that the prosecutor was guilty of misconduct. In the first place, the answers volunteered by the witness Grief were not responsive to the questions and the prosecutor can hardly be accused of misconduct when a witness makes unresponsive answers of a voluntary nature.

To put this entire matter in proper perspective, an examination of the bill of particulars requested by counsel for the Appellant at the trial level indicates just how careful the prosecutor was. The bill of particulars indicates that in the late afternoon or early evening of May 24, 1975, the Appellant broke into the mobile home, which burglary was the subject of this particular action, and stole a shotgun, a watch, a lunch box, automobile keys, shotgun shells and shotgun slugs. The bill of particulars then sets out that between this incident and five o'clock in the morning the Appellant stole three separate vehicles and sometime between 5:40 a.m. and 5:45 a.m. on May 25, 1977, the witness, Charles Grief, was awakened by hearing voices from the kitchen of his home. He heard his wife scream and simultaneously heard a shot. He picked up

a pistol and confronted the Appellant, who then fled from the house, Mr. Grief finding his wife's dead body on the floor of the kitchen where a shotgun had blown off a part of her forearm and left a hole in her chest of such size that the coroner could remove the shotgun wadding by placing his hand into the wound. The bill of particulars further outlines that the Appellant confessed to all these crimes, the burglary, the three car thefts and the murder; that he took the sheriff to the place where he had hidden the gun; that he had the watch on his person, and that the lunch box which was left at the home of Mr. Grief during the murder contained the car keys belonging to the various vehicles and to the persons whose home had been burglarized and further contained his parole papers. Under these circumstances, this Court considers it remarkable that Mr. Grief was able to be even partially objective in testifying in this case and considering the wealth of evidence at the command of the prosecutor, he can hardly be accused of misconduct. The confession was not read, as it contained references to the other crimes; no reference was made to the parole papers of the Appellant which were found in the lunch box. In fact, virtually none of the available evidence was presented to the jury except as it related to the burglary itself. The Appellant herein is not unlike the young man who confessed to killing his mother and father and asked for mercy on the grounds that he was an orphan.

It is probable that all of these indictments could have been consolidated for trial on proper motion, as they represented a series of events which took place in approximately twelve hours or less and were interconnected to the extent that the gun stolen in the burglary was used to murder Mrs. Grief.

The second ground urged for reversal is that under the circumstances of breaking into a temporarily unoccupied dwelling and stealing a gun a conviction of Burglary in the First Degree was not justified. The applicable statute is *Ky.Rev.Stat.* 511.020 which states as follows:

(1) A person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with the intent to commit a crime and when:

(a) In effect entry or *while in the dwelling or in immediate flight therefrom,* he or another participant in the offense:

1. *Is armed with* explosives or *a deadly weapon;* or

2. Causes physical injury to any person who is not a participant in the crime; or

3. Uses or threatens the use of a dangerous instrument against some person who is not a participant in the crime; or

(b) The entering or remaining occurs at night.

(2) Burglary in the first degree is a Class B felony. (Emphasis added).

■■■ The Appellant makes an excellent argument seeking to differentiate between being "in possession" of a deadly weapon and being "armed" with a deadly weapon, giving us the definition of possession as meaning "to have actual physical possession or otherwise to exercise actual dominion or control," and armed as being defined as "furnished or equipped with weapons of offense or defense." It is the opinion of this Court that under the applicable law of this Commonwealth and under the circumstances where it is used statutorily, there is virtually no difference between being in possession of a deadly weapon and being armed with a deadly weapon.

Under *Ky.Rev.Stat.* 515.020, relating to Robbery in the First Degree, we find the law as follows:

(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) *Is armed with a deadly weapon;* or

**256**

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

(2) Robbery in the first degree is a Class B felony. (Emphasis added).

The case law in Kentucky has never differentiated between these two factors when it relates to the use of a gun in accomplishing an armed robbery. The present law in Kentucky makes a distinction between a deadly weapon and a dangerous instrument. It is armed robbery merely to be armed with a deadly weapon but a dangerous instrument must be used or threatened. This was true under the old statute but the case law clearly made such a distinction. The case of *Owens v. Commonwealth*, 187 Ky. 207, 218 S.W. 719, 720 (1920) stated as follows:

> The established rule on the subject is that where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly . . . is one of law; but where the weapon employed is such that its deadly character depends upon the manner and circumstance of its use, the question is one of fact for the jury. See also *Napier v. Commonwealth*, Ky., 356 S.W.2d 755 (1962); *Murphy v. Commonwealth*, 255 Ky. 676, 75 S.W.2d 341 (1934).

It is best stated in the commentary to the Kentucky Penal Code where the author states, "If a robber is armed with a 'deadly weapon,' i. e., one having no usefulness other than as a weapon, he is a robber in the first degree; if he is armed with a 'dangerous instrument,' i. e., an object having legitimate uses, he is a robber in the first degree only if he uses or threatens to use the instrument."

Certainly a 20-gauge shotgun is one having no usefulness other than as a weapon. Appellant also urges that there was no evidence in the instant case that this gun was, in fact, a deadly weapon and yet complains that any reference may have been inadvertently made to the fact that it was used to murder a victim in a subsequent crime.

It is admitted in Appellant's brief that the difference between first and second degree burglary and third degree burglary are "aggravating factors that are considered sufficiently indicative of an offender's potential dangerousness to warrant sanctions greater than those established for burglary in the third degree." Certainly the possession of a deadly weapon inside a dwelling or any other building during the course of a burglary or while fleeing therefrom is "indicative of . . . potential dangerousness."

It should also be noted that this matter was submitted to the jury under instructions covering both First Degree Burglary and Third Degree Burglary and that the Appellant was convicted by the jury of the offense declaring him to be armed with a deadly weapon.

For the reasons above stated, the judgment of the lower court is affirmed.

All concur.