William Duane WESOLIC, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–3831, A–3927.

Court of Appeals of Alaska.

July 17, 1992.

Marcia E. Holland, Asst. Public Defender, Fairbanks and John B. Salemi, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

William Duane Wesolic was renting a room in a single-family North Pole residence owned by Forest Wilson. The house had four bedrooms; Wesolic rented one of these rooms, and the rental agreement additionally gave him access to the kitchen and the living room. However, Wilson reserved the other three bedrooms and the garage to his own use; there were locks on these rooms, and the house key that Wilson gave to Wesolic did not open these locks.

In late March 1990, Wilson's work took him to Valdez. Before he left, Wilson locked the three bedrooms and the garage. While Wilson was gone, Wesolic broke into these locked rooms and stole Wilson's property. This property included several firearms—four rifles, a .41 magnum pistol, and a .22 caliber pistol. Both pistols were in shoulder holsters and were loaded.

A Fairbanks grand jury indicted Wesolic for several crimes, including first-degree burglary. Wesolic was indicted for first-degree burglary under two theories: first, that he committed burglary of a dwelling, AS 11.46.300(a)(1), and second, that he committed burglary while armed with a firearm, AS 11.46.300(a)-(2)(A). Wesolic filed a pre-trial motion seeking dismissal of the burglary charge. He admitted that he had broken into the locked rooms in Wilson's house and had stolen Wilson's property. However, Wesolic argued that his entry into these locked rooms had not been "burglary", or at least had not been first-degree burglary. Wesolic pointed out that, as a renter, he was legally entitled to be inside Wilson's residence; he contended that Wilson's act of locking up the bedrooms and the garage had not transformed these rooms into separate "buildings" within the meaning of AS 11.81.900(b)(3). With regard to the State's second theory (burglary while armed with a firearm), Wesolic argued that the statute was not intended to cover situations in which a burglar steals a firearm during the course of the burglary. Following oral argument, Superior Court Judge Mary E. Greene denied Wesolic's motion.

Judge Greene held that a person who rents out a portion of his or her residence can nevertheless reserve a right of privacy in certain rooms of the house, that these rooms can constitute separate "buildings" within the meaning of AS 11.81.900(b)(3), and that, if they do, the renter commits burglary by breaking into those rooms and stealing property from them. Judge Greene recognized that the separateness of the locked rooms and Wesolic's authority or lack of authority to enter those rooms were ultimately factual questions; but since Wesolic was seeking dismissal of the charge before trial, the facts had to be construed in the light most favorable to the State. Judge Greene also ruled that the

first-degree burglary statute, AS 11.46.-300(a)(2)(A), encompassed situations in which the burglar becomes armed with a firearm through an act of theft inside the building.

Following Judge Greene's ruling, Wesolic entered pleas of no contest to first-degree burglary, second-degree theft, and first-degree misconduct involving weapons (being a felon in possession of a concealable firearm). Although the record nowhere reflects this, Wesolic apparently reserved his right to appeal Judge Greene's ruling on his motion to dismiss the burglary charge. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

Under AS 11.46.310(a), a person commits burglary when he or she "enters or remains unlawfully in a building with intent to commit a crime in the building." Wesolic concedes that he entered the locked bedrooms and garage in order to steal Wilson's property; thus, what remains to be decided under AS 11.46.310(a) is whether Wesolic (1) unlawfully entered (2) a building when he broke into those locked rooms.

■ Under AS 11.46.350(a)(1), a defendant unlawfully enters property when he or she "enter[s] ... in or upon premises ... when the premises ... [are] not open to the public and when the defendant is not otherwise privileged to do so". Wesolic's conduct falls within this definition. Wilson's residence was not open to the public, and, viewing the evidence in the light most favorable to the State, Wesolic was not privileged to enter the locked bedrooms and garage (even though he was renting another portion of the residence).

■ The question then becomes whether a locked bedroom or garage can constitute a separate "building". Under AS 11.81.-900(b)(3), a "building", in addition to its usual meaning, "includes any ... structure adapted for overnight accommodation of persons or for carrying on business". The statute also specifies that "when a building consists of separate units, including apartment units, offices, or rented rooms, each unit is considered a separate building". This court has twice addressed the problem of identifying when a room or suite of rooms within a larger structure constitutes a separate "building" for purposes of the burglary statute.

In *Arabie v. State*, 699 P.2d 890 (Alaska App.1985), this court held that a defendant could not be convicted of burglary for entering and stealing beer from the walk-in cooler of a grocery, a commercial establishment otherwise open to the public. Even though the cooler bore a sign indicating that entry by the general public was not authorized, this court concluded that the cooler was simply part of the grocery's operation, not so distinct a unit as to qualify as a "building" under AS 11.81.900(b)(3).

On the other hand, in *Pushruk v. State*, 780 P.2d 1044 (Alaska App.1989), this court held that a defendant could be convicted of burglary for breaking into a restaurant located inside a hotel. Although the hotel was open for business, the restaurant was closed; the doors allowing access to the restaurant from the hotel lobby were locked. This court concluded that, construing the evidence in the light most favorable to the State, the restaurant was a separate "building" under AS 11.81.900(b)(3). The evidence showed that the restaurant was both physically and functionally a discrete part of the hotel's business: there was a clear physical demarcation between the hotel lobby and the restaurant, and it was obvious (from the locked doors) that the restaurant was closed to the public. *Pushruk*, 780 P.2d at 1046.

Some additional insight is furnished by the commentary to the definition of "building" found in the Alaska Criminal Code Revision, Tentative Draft, Part 3, p. 52. In this commentary, the drafters of the current criminal code stated:

> The definition's reference to "separate units" of a building is relevant to intrusions in hotels, apartment houses, offices with multiple tenants, ferries with private cabins, and similar structures. The result [of this definition] is that an intrusion into a single unit constitutes an entry into a building, which can be the basis of a burglary or criminal trespass prosecution.

Both the language of AS 11.81.900(b)(3) and this draft commentary indicate that, had Wesolic been one of several boarders in a private house, each boarder's private room would constitute a "building" and Wesolic's unlawful entry into another boarder's room would be burglary. This result is consistent with the analysis this court used in *Pushruk*, and it is the result reached in *State v. Cochran*, 191 Conn. 180, 463 A.2d 618 (1983), interpreting Connecticut General Statute 53a–100, a definition of "building" almost identical to ours. We discern no reason to alter this result when a boarder breaks into the private quarters of the boarding house proprietor—or, as in this case, when the sole renter breaks into the landlord's locked, private portion of the house.

We therefore agree with Judge Greene that, viewing the evidence in the light most favorable to the State, the locked bedrooms and garage in Wilson's residence constituted a separate building, and thus Wesolic's unlawful entry into these rooms was a burglary. The final issue is whether Wesolic's burglary was of the first or second degree.

The grand jury charged that Wesolic's burglary had been of the first degree both because the burglarized building was a dwelling, AS 11.46.300(a)(1), and because Wesolic had been armed with a firearm during the course of the burglary (due to his theft of firearms from the locked rooms), AS 11.46.300(a)(2)(A). Either theory independently establishes the higher degree of crime.

■ A "dwelling" is defined in AS 11.81.900(b)(17) as "a building that is designed for use or is used as a person's permanent or temporary home or place of lodging". Wesolic might potentially have argued that, even if the locked rooms in Wilson's house constituted a separate "building", they still were not a "dwelling" as defined in this statute. However, Wesolic never raised this argument in the superior court, either in his written motion or during oral argument on that motion. Wesolic's appellate brief likewise fails to identify or address this issue. Moreover, viewing the particular facts of this case in the light most favorable to the State, it is obvious that Wesolic burglarized the portion of the house that constituted Wilson's dwelling.

■ Further, we agree with Judge Greene that a burglar who arms himself with a firearm stolen during the course of a burglary thereby commits first-degree burglary under AS 11.46.300(a)(2)(A). This statute specifies that a burglary is of the first degree when "in effecting entry or while in the building or immediate flight from the building, the person is armed with a firearm". From its disjunctive wording, this statute clearly contemplates situations in which a burglar enters unarmed and thereafter becomes armed. The risks of potential violence and serious injury to building occupants, police, bystanders, and even the burglar himself are as fully present when the burglar steals a firearm from within the building as when the burglar arrives already armed.

■ Wesolic argues that mere possession of a firearm does not constitute being "armed"; rather, he asserts, a defendant should not be considered "armed" with a firearm unless the State proves both that the defendant possessed a firearm and that the defendant intended to use the firearm in furtherance of the crime. However, the legislative commentary to AS 11.46.300 declares that "there is no requirement that the defendant use the firearm". 1978 Senate Journal, Supp. No. 47 (June 12), pp. 43–44. This treatment of firearms contrasts with the legislature's treatment of other dangerous weapons. Alaska Statute 11.46.300(a)(2)(C) states that, even though a burglar might possess a dangerous weapon (other than a firearm), the burglary becomes first-degree burglary only if the defendant "uses or threatens to use a dangerous instrument".

Thus, it appears that the legislature intended a burglar's simple possession of a firearm to elevate the crime to burglary in the first degree, at least when that firearm

is accessible for use.[1] Other courts have interpreted their similar burglary statutes in this way. *See State v. Faille*, 53 Wash. App. 111, 766 P.2d 478 (1988), and *Meadows v. Commonwealth*, 551 S.W.2d 253 (Ky.App.1977).

Wesolic acknowledges this adverse legal authority, but he asks us to reject it in favor of the result reached in *State v. Bedford*, 715 P.2d 761 (Ariz.1986). In *Bedford*, the defendant had burglarized a house; among the stolen items found piled next to the front door was a shotgun in a zippered case. Unlike Alaska law, Arizona law normally classifies a residential burglary as second-degree burglary. *Id.* However, Arizona law specifies that a residential burglary becomes first-degree burglary if the defendant is "armed with explosives, a deadly weapon, or a dangerous instrument" in the course of the crime. Arizona Revised Statute § 13–1508(A).

The Arizona supreme court held that a burglar could become "armed" with a weapon stolen during the burglary, but only if the evidence showed the burglar's willingness or present ability to use the firearm as a weapon. If the evidence indicated that the burglar viewed the firearm as simply another piece of loot, the crime remained second-degree burglary. *Bedford*, 715 P.2d at 763.

The Arizona supreme court candidly explained that its interpretation of the Arizona statute was shaped by the court's fear that a contrary interpretation would render nearly every burglary a first-degree burglary. As noted above, Arizona law does not distinguish between a burglar's possession of a firearm and a burglar's possession of a "dangerous instrument". Moreover, Arizona law, mirroring Alaska law, defines "dangerous instrument" quite broadly: "anything that under the circumstances in which it is used … is readily capable of causing death or serious physical injury." *Bedford*, 715 P.2d at 763; *compare* AS 11.81.900(b)(11). Thus, if the phrase "armed with" were interpreted to mean simply "possesses", then a burglar's possession of any implement that could theoretically be employed to inflict serious physical injury would lead to a conviction for first-degree burglary. To avoid this result, the Arizona supreme court chose to give a narrow interpretation to the phrase "armed with". *Id.* at 763.

The problems facing the Arizona supreme court in *Bedford* do not arise under Alaska law. First, Alaska law makes all residential burglaries first-degree burglaries, whether or not the perpetrator is armed. Second, for non-residential burglaries, Alaska law clearly distinguishes between the presence of firearms and the presence of dangerous instruments: a burglar's possession of a firearm will convert the offense to first-degree burglary, but a burglar's possession of a non-firearm dangerous instrument will not affect the degree of the crime unless the defendant uses or threatens to use the dangerous instrument. We therefore conclude that the reasoning of *Bedford* is inapplicable to Alaska's statute. We instead adopt the interpretation suggested by the statutory language, the statutory policy, the legislative commentary, and the decisions in *Faille* and *Meadows*.

For these reasons, we affirm Wesolic's first-degree burglary conviction. We now turn to Wesolic's sentence.

Wesolic pleaded no contest to first-degree burglary, a class B felony, AS 11.46.-300(b), to second-degree theft, a class C felony, AS 11.46.130(b), and to first-degree misconduct involving weapons, another class C felony, AS 11.61.200(f). In addition to these present offenses, Wesolic had sev-

---

1. We do not decide whether a burglary becomes burglary in the first degree when the defendant steals a firearm that is not readily usable or accessible—for instance, a disassembled weapon in a sealed crate. We note, however, that the Alaska Supreme Court interpreted our state's former felon-in-possession statute to cover a felon's possession of firearms that were unloaded, or were not fully assembled, or were in some other way not immediately ready for use. *Davis v. State*, 499 P.2d 1025, 1038 (Alaska 1972), *rev'd on other grounds, Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

Here, it is undisputed that the rifles and pistols Wesolic stole were readily available for his use.

en prior convictions for forgery, theft, credit card fraud, and false statement.

The superior court found that, for presumptive sentencing purposes, Wesolic had committed at least three prior felonies. Wesolic was therefore a third felony offender under AS 12.55.185(9); moreover, aggravating factor AS 12.55.155(c)(15)—more than two prior felonies—also applied. In addition, Wesolic conceded aggravating factor (c)(20)—that he was on felony probation when he committed the present crimes. Finally, because of Wesolic's extensive history of criminal convictions involving forgery, fraud, and theft, Judge Greene found that Wesolic had a history of repeated instances of criminal conduct similar in nature to the offenses for which he was being sentenced—aggravating factor (c)(21).

At his sentencing, Wesolic argued that his burglary was among the least serious conduct included within the definition of burglary, mitigating factor AS 12.55.-155(d)(9). Wesolic claimed that, because he had been renting a room in the residence, his burglary had not presented the more terrifying scenario of a stranger breaking into a house from the outside. Wesolic also argued that he had purposefully chosen a time when the owner of the house was away, so that no one was terrorized by the burglary.

Judge Greene agreed that Wesolic's act of breaking into locked rooms within a house, when he was privileged to be in other portions of the house, presented a less terrifying type of crime than a burglary committed by a complete stranger. However, she believed that Wesolic's crime was aggravated by the fact that he had obtained and then abused the homeowner's trust. Weighing these two factors together, Judge Greene concluded that Wesolic had failed to prove that his burglary of Wilson's house was substantially more mitigated than the more usual type of burglary.

■ Wesolic challenges this ruling on appeal. He again argues that a burglary is mitigated if the burglar waits until he is sure that the occupants of the house are away. However, this behavior does not

distinguish Wesolic's burglary from the run-of-the-mill offense: burglars often wait until a structure is unoccupied so that they can more easily accomplish their planned theft and so that they run a lesser risk of detection and arrest.

■ Wesolic also argues that his abuse of Wilson's trust was not a proper factor to take into account when judging the seriousness of the burglary. Wesolic suggests that this factor could properly be employed to aggravate his theft conviction, but not his burglary conviction. However, we agree with Judge Greene that a renter's abuse of his landlord's trust is a proper factor to take into account when judging the seriousness of the renter's subsequent burglary. Because of his misplaced trust in Wesolic, Forest Wilson left Wesolic alone in the house while Wilson traveled to Valdez. This gave Wesolic the opportunity to break into Wilson's rooms and steal his property at leisure, with far more secrecy than a burglar normally enjoys when he or she must break into a dwelling from outside.

For these reasons, we conclude that Judge Greene's rejection of Wesolic's proposed mitigating factor was not clearly mistaken. *Lepley v. State*, 807 P.2d 1095, 1099 n. 1 (Alaska App.1991).

■ Finally, Wesolic challenges the total length of his sentence. Judge Greene sentenced Wesolic not only for the three felonies discussed above but also for three more felonies Wesolic had committed in Anchorage: second-degree theft, second-degree forgery, and first-degree misconduct involving weapons.

With regard to the Fairbanks cases, Judge Greene sentenced Wesolic to a composite term of 8 years to serve. For the first-degree burglary, Judge Greene imposed a sentence of 10 years' imprisonment with 2 years suspended. Judge Greene then imposed concurrent sentences of 5 years with 1 suspended for the second-degree theft and 3 years for the first-degree weapons misconduct.

With regard to the Anchorage cases, Judge Greene imposed a composite sen-

tence of 5 years to serve. Judge Greene sentenced Wesolic to concurrent 5–year terms of imprisonment for his forgery and theft convictions, and she imposed another concurrent 3–year term for the weapons misconduct conviction.

Judge Greene then declared that 3 years of Wesolic's sentences in the Anchorage case would be consecutive to his sentences in the Fairbanks case—making a total composite sentence of 11 years to serve.

Wesolic argues on appeal that his sentence should not have exceeded 10 years to serve. He relies upon this court's decision in *Neff v. State*, 799 P.2d 782 (Alaska App. 1990). The defendant in *Neff* had been convicted of various property offenses, all classified as class C felonies; for these crimes, Neff received a composite sentence of 13½ years to serve. This court reduced Neff's sentence, reiterating approval of the 10–year benchmark advocated by the American Bar Association's Standards for Criminal Justice (2nd ed. 1982), § 18–2.1(e): "For most offenses, the maximum prison term authorized ought not to exceed ten years".

However, soon after *Neff* was decided, the Alaska Supreme Court held that Standard § 18–2.1(e) was not the law of Alaska, and that when the ABA's 10–year rule tends to conflict with the presumptive sentencing scheme established by the legislature, the legislature's penalty ranges will control. *State v. Wentz*, 805 P.2d 962, 966 n. 5 (Alaska 1991). In contrast to the defendant in *Neff*, Wesolic was convicted of a class B felony. Because Wesolic was a third felony offender, he faced a presumptive term of 6 years' imprisonment for this offense. AS 12.55.125(d)(2). Moreover, because the superior court found three aggravating factors, the court was theoretically empowered to sentence Wesolic to any term of imprisonment up to 10 years for the burglary alone. AS 12.55.155(a)(2); AS 12.55.125(d).

Based on Wesolic's past record of criminal convictions and the numerous criminal acts involved in this appeal, all committed while Wesolic was on felony probation, Judge Greene found that Wesolic was an offender who could not be deterred or easily rehabilitated. She therefore chose to impose a sentence that emphasized the *Chaney* criteria of community condemnation of Wesolic's conduct and isolation of Wesolic to protect the public from future harm. *State v. Chaney*, 477 P.2d 441 (Alaska 1970); *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973). The record supports Judge Greene's evaluation.

Judge Greene essentially found that Wesolic was a dangerous criminal who could properly be classified as a worst offender. See *State v. Graybill*, 695 P.2d 725, 730–31 (Alaska 1985), holding that an offender can be labeled "dangerous", and thus deserving of an unusually severe sentence, based upon a record of repeated violations of the law and failures to abide by probation. While the maximum term for a defendant's single most serious offense (here, 10 years) is an important sentencing benchmark, *Mutschler v. State*, 560 P.2d 377 (Alaska 1977); *Clifton v. State*, 758 P.2d 1279 (Alaska App.1988); *Karr v. State*, 660 P.2d 450 (Alaska App. 1983), *rev'd on other grounds* 686 P.2d 1192 (Alaska 1984), this benchmark can be exceeded when, as here, the defendant is being sentenced for unrelated offenses. *Preston v. State*, 583 P.2d 787 (Alaska 1978); *Farmer v. State*, 746 P.2d 1300, 1301–02 (Alaska App.1987).

We find that Judge Greene's decision to sentence Wesolic to serve 11 years in prison for the combination of his Fairbanks and Anchorage crimes was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgement of the superior court is AFFIRMED.