**Joseph Stanford ARABIE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–139.**

Court of Appeals of Alaska.

May 17, 1985.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Joseph Stanford Arabie was convicted of second-degree burglary. AS 11.46.310(a). He appeals the trial court's denial of his motion for acquittal, contending that the evidence against him was insufficient to support his conviction for burglary. We find that Arabie's conduct did not amount to burglary under AS 11.46.310(a) and reverse.

Arabie was convicted of burglarizing the Box Boy grocery and liquor store in Fairbanks. The store is a single building with a single main entrance into a foyer, which contains entrances to the liquor and grocery departments. The two departments are connected at the employee work area behind the counter and at the storage area in the back of the store. The liquor department has a walk-in beer cooler posted with an "employees only" sign. The cooler has a rear door into the storage area. There is also a door at the back of the store building, which opens into the storage area. This door is usually secured by wedging a large metal plate against it from the inside. However, on the evening of March 10, 1983, the store clerk was interrupted while doing this; he testified that he had just left the plate leaning against the door.

While talking to a customer later that evening, the clerk heard a loud metallic crash from the back room. He ran back. A case of beer lay on the floor inside the cooler near the front entrance. Arabie was leaving the back door of the beer cooler with another case of beer in his hands. The clerk testified that Arabie threw the beer at him and ran for the back door. The clerk tackled Arabie and managed to hold him until the police arrived.

Arabie maintains that his conduct did not amount to burglary under AS 11.-46.310(a), which reads:

A person commits the crime of burglary ... if the person enters or remains unlawfully in a building with intent to commit a crime in the building.

Specifically Arabie argues that he did not "enter or remain unlawfully in a building" since at the time he entered the Box Boy it was open for business. Under AS 11.46.-350(a), in order to "enter or remain unlawfully," the defendant must: "enter or remain in or upon premises ... when the premises ..., at the time of the entry or remaining, is not open to the public and when the defendant is not otherwise privileged to do so...."

Alaska Statute 11.81.900(b)(3) defines "building" as follows:

"building," in addition to its usual meaning, includes any propelled vehicle or structure adapted for overnight accommodation of persons or for carrying on business; when a building consists of separate units, including apartment units, offices, or rented rooms, each unit is considered a separate building.

This definition expressly addresses the situation where occupancy of a structure is by unit: "it is the individual unit as well as the overall structure that must be safeguarded." *Model Penal Code*, § 221.1 commentary at 73 (1980). The entire Box Boy store building is a "structure adapted ... for carrying on business." AS 11.81.-900(b)(3). The walk-in cooler is not a sepa-

rate unit, but a storage area within the single-business structure. In the absence of legally identifiable "separate units" within the Box Boy store, the entire building must be deemed the relevant structure for purposes of determining whether Arabie unlawfully entered a "building," in violation of AS 11.46.310(a) and AS 11.46.350(a).

Since it is undisputed that the Box Boy store building was itself open for business, and since Arabie entered no separate subunit of the building, it follows that his entries into the store, the back room, and the walk-in cooler were not unlawful under the burglary statute.

While Arabie's entries of the beer cooler and back room may have constituted a criminal trespass, see AS 11.46.330(a)(1), they did not, in themselves, amount to unlawful entries of a building—an element of the offense of burglary.

The state nevertheless maintains that the statutory language "remain unlawfully" means that the crime of burglary is committed if a person who is in a building that is partially open to the public goes into an area where that person has no right to be, and thereafter stays in that area with intent to commit a crime. Under the state's interpretation, even though the Box Boy store building was open to the public, Arabie would have committed burglary by "remaining unlawfully" at the moment he entered the rear storage area or the walk-in cooler,[1] since both areas are generally reserved for employees.

The state's proposed interpretation of the "remain unlawfully" provision, though resourceful, appears to be precluded by the plain statutory language. Under AS 11.46.350(a) premises must be closed to the public for an unlawful act of entry or remaining to occur.[2] It seems apparent from the plain statutory language that, for purposes of determining whether Arabie either unlawfully "entered" or "remained in" the Box Boy store, the same analysis applies. Arabie must be shown to have "entered" or "remained in" a closed building; the relevant building is the same for either entry or remaining: the entire Box Boy building.

The state suggests, however, that the legislature's use of the term "building" in AS 11.46.310 and AS 11.81.900(b)(3) should be distinguished from its use of "premises" in AS 11.46.350. According to the state, this distinction creates sufficient ambiguity to permit a judicial gloss on the terminology, broadening the meaning of "premises" to include all restricted areas in a public building. It appears to us, however, that there is no significant ambiguity in the statutory language; the legislature's intent to use the terms "building" and "premises" interchangeably is reasonably apparent. Cf. Anchorage v. Lloyd, 679 P.2d 486 (Alaska App.1984).

Even assuming the existence of ambiguity, we would decline to extend the burglary statute to include all situations where a person enters a building open to the public and then proceeds to an area inside the building which, though restricted, is not a "separate building" as defined in AS 11.81.900(b)(3). Our interpretation of the burglary statute is consistent with the doctrine that criminal statutes should be strictly construed. 3 C. Sands, Sutherland Statutory Construction § 59.03 at 6–7 (4th ed. 1974).

The purpose of the "open to the public" clause in AS 11.46.350(a) is to bring the law of burglary closer to its common

---

1. There was conflicting testimony at trial as to whether Arabie first entered through the rear door or the public entrance in front. In either case, the state contends, a burglary was committed once Arabie entered an area of the building that was closed to the public.

2. Under the clear language of AS 11.46.350(a), the question whether a defendant had a privilege to enter or remain on the premises becomes germane only if the premises were closed to the public. Thus, under the statute, once the state established that the defendant entered or remained in a closed building, it must further show that the entry or remaining was not otherwise privileged.

law ancestor, which sought to protect private premises from crime. *See Commonwealth v. Cost,* 238 Pa.Super. 591, 362 A.2d 1027, 1032 (1976).

> When a person comes onto property by lawful means, he remains criminally accountable only for the acts he thereafter performs on the property, but his entry in itself imposes no special terror or invasion of privacy on the property holder so as to render the culprit guilty of burglary.

Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. II, page 894 (1970), *quoted in* C. Torcia, *Wharton's Criminal Law* § 329 at 198 n. 29 (14th ed. 1980). *See also Model Penal Code,* § 221.1 commentary at 67 (1980) (burglary in Model Code limited to the "invasion of premises under circumstances especially likely to terrorize occupants").

■ As the commentary to the *Model Penal Code, supra,* at 70, points out, however, "the fact of lawful entry does not necessarily foreclose the kind of intrusion that burglary is designed to reach." Accordingly, the Alaska burglary statute expressly applies to a person who "remains unlawfully in a building with an intent to commit a crime in the building." The commentary to AS 11.46.350 in the tentative draft of the 1980 revised criminal code explains that the "word 'remain' in the phrase 'enter or remain unlawfully' is also designed to apply to cases in which a person enters with a 'license or privilege' but remains on the premises after his license or privilege has terminated." Alaska Criminal Code Revision Part III, at 53–54 (Tentative Draft 1977). Thus, the provision is intended to cover situations in which a person is privileged to enter a closed building but remains in the building after the privilege has expired; likewise, it applies to the situation where a person enters a building when it is open to the public but remains after the building has closed. *See* Commentary on the Alaska Revised Criminal Code, Supp. No. 47 at 43 in 2 Senate Journal (1978), following p. 1414.

■ Expansion of the meaning of "remains unlawfully" beyond these situations is, we believe, unwarranted. Entry into a restricted area of a building which is otherwise open to the public is not a severe intrusion and is not likely to terrorize occupants; the public is generally licensed or privileged to be within the building. It is not the kind of entry that burglary is designed to reach. *See Model Penal Code, supra,* at 68–74. Under the state's interpretation of "enter or remain unlawfully," which would apply to anyone who is present in a place where he has no right to be, a shoplifter who stole from behind the counter, from a window display, or from a stock area would commit the crime of burglary. Fourth-degree theft, a class B misdemeanor (AS 11.46.150), would become second-degree burglary, a class C felony (AS 11.46.310), depending on precisely where within a public building the defendant was standing when committing the theft. Classification of cases would hinge entirely on disputable distinctions between open and closed areas of public businesses, where boundaries between such areas are often unenforced and ill-defined, inadequately marked and widely ignored. The Alaska burglary statute currently makes no such distinctions. As written, AS 11.46.310(a) applies to entry or remaining unlawfully in a building only when at the time of the entry or remaining the building itself is not open to the public. Entry into a closed portion of an open building is not burglary unless the closed portion entered is a separate building under AS 11.81.900(b)(3).[3]

**3.** We note that the Alaska statute does not distinguish buildings that are only partially open to the public. Certainly, the legislature could choose to enact specific legislation doing just that. We do not imply that such a choice would ultimately be unsound as a matter of policy or impermissible as a matter of law. *See, e.g.,* Colo.Rev.Stats. § 18–4–201(3) (1973 & Supp. 1984) ("A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."); N.Y.Penal Law § 140.00(5) (McKinney 1973 & Supp.1984) (prohibit-

Since the Box Boy, a 24-hour store, was open to the public when Arabie entered, and since neither the walk-in cooler nor the rear storage area can be considered a separate building under the statutory definition, Arabie could not properly be convicted of burglary.

The conviction is REVERSED.

ing entry either of a closed building or of "that part of the building which [was] not open to the public"). It is particularly relevant that, when it adopted the language of AS 11.46.350(a), the Alaska legislature was specifically aware of and relied in part on N.Y.Penal Law § 140.00. *See* Alaska Department of Law Criminal Code Manual, Derivation Table, page 4–7 (1979). Thus, it appears that in adopting the current Alaska statute the legislature considered and rejected statutory language of the New York penal code which specifically embodies the interpretation proposed by the state here.