**Frank PUSHRUK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2344.**

Court of Appeals of Alaska.

Sept. 29, 1989.

Rex Lamont Butler, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

Frank Pushruk was convicted by a jury of second-degree burglary, a class C felony, in violation of AS 11.46.310(a), and fourth-degree theft, a class B misdemeanor, in violation of AS 11.46.150. Pushruk appeals his burglary conviction. We affirm in part and reverse in part and remand for a new trial.

### FACTS

During the early morning of September 30, 1986, Pushruk and several other young men entered the Coach House Restaurant and Lounge, located inside the Anchorage Travelodge Hotel, to use the restroom. A hotel employee told the young men that the restaurant and bar were closed and they were asked to leave. All the men except one, Keith Joe, left the restaurant and bar. *Id.* Apparently, Joe was still in the restroom of the restaurant when the employee locked the front door of the restaurant, which is located inside the Travelodge. When Joe left the restroom, he noticed that the front door to the restaurant was locked and he decided to go out the back door. Instead of closing the door all the way after leaving, which would have locked it

from the inside, Joe propped the door open with a fork. He testified that he did this to keep the door unlocked so that he could return with his friends and steal some liquor. He then left the bar and returned shortly thereafter with several of the young men, including Pushruk. Joe, Pushruk, and the others then broke into the liquor cabinets and left with several bottles of various kinds of liquor. `

### DISCUSSION

After the state's closing argument, Pushruk moved for judgment of acquittal, reasoning that under this court's ruling in *Arabie v. State*, 699 P.2d 890 (Alaska App. 1985), his conduct did not constitute burglary. Specifically, he argues that because the restaurant was apparently owned and operated by the same corporation, an assertion that is not disputed on appeal, as opposed to the space being rented to a separate corporation, the restaurant was a sub-unit of the hotel and was not a separate "building" within the meaning of the burglary statutes. The trial court denied the motion, ruling that the hotel and restaurant were separate businesses and therefore separate "buildings."

Alaska Statute AS 11.46.310(a) defines burglary in the second degree:

*Section 11.46.310. Burglary in the second degree.* (a) A person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime in the building.

Under AS 11.46.350(a), "remain unlawfully" means to:

(1) enter or remain in or upon premises or in a propelled vehicle when the premises or propelled vehicle, at the time of the entry or remaining, is not open to the public and when the defendant is not otherwise privileged to do so;

(2) fail to leave premises or propelled vehicle that is open to the public after being lawfully directed to do so personally by the person in charge[.]

"Building" is defined in AS 11.81.900(b)(3) as:

"Building," in addition to its usual meaning, includes any propelled vehicle or structure adapted for overnight accommodation of persons or for carrying on business; when a building consists of separate units, including apartment units, offices, or rented rooms, each unit is considered a separate building[.]

Alaska Statute 11.81.900(b)(3) specifically states that a portion of a building which is a separate unit is considered a separate building. This language indicates that the legislature considered that one larger structure, with four walls and one roof exposed to the elements, may in fact shelter several smaller, distinct units which could be individually burglarized. The statute provides examples of what types of units are "separate units": apartments, offices, and rented rooms. This list is illustrative but not definitive. It certainly does not exhaust the list of what would be considered "separate units" for purposes of burglary.

In *Arabie*, the defendant was convicted of burglary when, after legally entering an open Box Boy store, he crossed into a storage/cooler area marked "employees only" and attempted to leave with a case of beer without paying for it. *Arabie*, 699 P.2d at 892. This court reversed Arabie's conviction, holding the storage area was not a separate building within the meaning of the burglary statutes. The court further held that "[i]n the absence of legally identifiable 'separate units' within the Box Boy store, the entire building must be deemed the relevant structure for purposes of determining whether Arabie unlawfully entered a 'building,' in violation of AS 11.46.310(a) and AS 11.46.350(a)." *Id.* at 893. The court reasoned that an entry into a restricted area of a building which is otherwise opened to the public is not the kind of severe intrusion that is likely to terrorize occupants, because the public is generally licensed or privileged to be within the building. *Id.* at 894. The court expressed concern that ordinary misdemeanor theft might be elevated to felony burglary based "entirely on disputable distinctions between opened and closed areas of public businesses where boundaries between such

areas are often, unenforced and ill-defined, inadequately marked and widely ignored." *Id.*

There are several differences distinguishing *Arabie* from Pushruk's case which could justify a jury finding that Arabie's conduct was not burglary but that Pushruk's conduct was.

First, the *Arabie* court expressed concern that "ill-defined, inadequately marked and widely ignored" boundaries might cause misdemeanor theft to be elevated to felony burglary. This concern does not exist in Pushruk's case. The restaurant that Pushruk and his cohorts broke into was indisputably off limits to the public in general and to these men in particular. The doors were locked and they knew it. Moreover, they had been specifically told to leave the restaurant because it was closed.

Second, another concern in *Arabie* was the desire not to stray too far from the common law purpose behind the offense of burglary—the idea that breaking into someone's property is likely to instill terror in the occupants of the property. In *Arabie*, as the court pointed out, entry into the restricted area within the open building was not likely to terrorize the occupants. In Pushruk's case, breaking into a locked restaurant would have been likely to terrorize anyone who might have legitimately been in the closed area.

Third, in Pushruk's case, the opened part of the building and the closed part of the building represent separate and distinct functions of the hotel. In *Arabie*, on the other hand, the opened part of the store and the closed part of the store served basically the same function—storing and selling alcohol.

Finally, it is clear that Pushruk and his companions entered the restaurant through the back door, not through the door which led from the open hotel into the restaurant. For all of these reasons, we conclude that when construing the evidence most favorable to the state, a reasonable jury could find beyond a reasonable doubt that Pushruk violated the burglary statute. *See Jennings v. State*, 404 P.2d 652, 654 (Alaska 1965).

Pushruk next argues that the court erred by entering a protective order precluding him from arguing that the restaurant and hotel were a single building for purposes of the burglary statutes. At Pushruk's request, the court instructed the jury on the statutory meaning of the word "building" so that Pushruk could make his argument. The only restriction the court imposed was that Pushruk limit his argument to the facts in issue:

DEFENSE COUNSEL: I'm certainly baffled. I don't understand what the state is trying to get a protective order against.

THE COURT: Well, you're—you're going to argue that in fact he didn't commit burglary because this wasn't a separate building. And you can argue the facts as they've been developed, as there's evidence to support those facts, consistent with the law that is being given in the instructions. You can't argue outside the law and you can't argue outside the facts as have been admitted into evidence.

DEFENSE COUNSEL: That's correct, Your Honor.

Thereafter defense counsel argued as follows:

DEFENSE COUNSEL: Now, we submit first of all that the Travel Lodge (sic) is one complete building, and of course, each room that any one of us or any one of the general public rent is a specific unit of the building. And, of course, it is our—we submit to you that once a person like yourself rents a specific room, theoretically that room becomes a separate part of that building because we ourselves at that point have an individual interest in the security and the privacy of that particular room. And I'll pick a room hypothetically. Room 31. If one of you were to rent Room 31, that room becomes your individual room. You have the exclusive right and control of that particular room. Because ...

PROSECUTOR: Your Honor, I'm going to object. That's a misstatement of the law. May we approach the bench?

THE COURT: [Counsel], you must pass on to something else. I'm going to give the instructions, the jury will determine what that means pursuant to the—their view of what the evidence is.

DEFENSE COUNSEL: Your Honor, this ...

THE COURT: You may not enlarge upon it.

DEFENSE COUNSEL: ... (indiscernible—away from microphone). Your Honor, for the record, I would say that I did not misstate the law even though ...

THE COURT: I said that you must pass on to something else.

DEFENSE COUNSEL: ... (indiscernible). Essentially as far as a building is concerned the element is there, we concede that Mr. Pushruk went into that building ...

Pushruk interprets this exchange as precluding him from arguing that the bar and the hotel were one building. The objection, however, seems aimed at prohibiting Pushruk from arguing that, as a matter of law, the bar could not be a separate unit unless it was rented by an entity separate from the ownership of the hotel by the analogy to a private individual renting a hotel room. There is nothing in the statutory definition of building, or the examples given of separate units which would require separate owners, in order to have separate units. Judge Carlson was correct that the jury should decide the issue based on the instruction and the evidence.

On the other hand, Pushruk should have been permitted, in accordance with the order previously entered, to argue that, in light of the evidence in the record, the bar and hotel were a single building. It is not clear what the court intended to prevent by its remark "you may not enlarge upon [the statutory definition of building]." It is not necessary for us to decide whether any harmful error occurred because we are reversing for other reasons.[1]

Pushruk next argues that the trial court erred in failing to instruct the jury on the correct definition of "enter or remains unlawfully in a building with intent to commit a crime."

During closing argument, the prosecutor said:

> Or you can find that he had the intent while he remained unlawfully. Remember the instructions enters or remains unlawfully. He has to have that intent at some point in time. And even if he didn't have the intent when he first stepped in the back door, he formed that intent sometime. It may have been when they were all rustling to get the cabinets open. Which Keith Joe said we all helped out, we all pried the cabinets open, we all carried bottles out. He may have formed the intent when he reached up and took his first bottle. His second bottle. His third bottle.... All twelve of you must agree that he's guilty. But you don't have to agree as to where you're defining the guilt. *You don't have to all agree that he entered with the intent to commit the crime.* Some of you may think he entered with the intent to commit a burglary, some of you may think he remained unlawfully and formed the intent to commit a burglary. It doesn't matter how you come to the conclusion, as long as all twelve of you conclude that he entered or remained unlawfully with the intent to commit the crime of theft in a building. [Emphasis added].

Defense counsel did not object. In his own closing, however, defense counsel attempted to tell the jury that it needed to find that Pushruk had already formed the intent to steal when he entered the restaurant to be found guilty of burglary. The state objected, arguing that defense counsel was misstating the law. The court allowed defense counsel to proceed, telling the jury that they would receive an instruction on the law. During rebuttal and closing argument, the prosecutor again explained to the

---

1. We recognize that there may be cases occupying the borderline between the *Arabie* situation and Pushruk's, in which a significant jury question might be presented regarding whether a part of a building constituted a "separate unit" or was merely a component part of a single building. On this record, no such significant issue was presented by the evidence.

jury his interpretation of burglary. Defense counsel objected, and again the trial judge informed the jury that it would be instructed on the law.

It is clear, however, that the jury never did receive an accurate explanation from the trial judge as to when an intent to commit a crime must be formed with reference to an illegal entry. In fact, the jury received no instruction at all on this point. Defense counsel pointed out to the trial judge, after the instructions were read, that the jury might not understand what "enter or remain unlawfully" means. It appears that the trial judge believed Pushruk could be convicted of burglary even if he formed his intent to steal after illegally entering or remaining in the restaurant.

The state concedes prejudicial error on this point and acknowledges that Pushruk's conviction must be reversed. An independent evaluation of the issue by the court as required by *Marks v. State*, 496 P.2d 66, 67 (Alaska 1972), proves the concession of error is well-founded and should be accepted. It is clear under Alaska law that to find a defendant guilty of burglary, the state must show the defendant had the intent to commit an additional crime at the time his presence on the premises first became unlawful, *i.e.*, at the time that he first trespassed, entered or remained unlawfully on the premises. *See Palmer v. State*, 770 P.2d 296, 298 n. 1 (Alaska App.1989); *Shetters v. State*, 751 P.2d 31, 36 n. 2 (Alaska App.1988); *Arabie*, 699 P.2d at 894–95. As the state concedes, the error cannot be considered harmless because there was some evidence to suggest that the men, other than Joe, may have entered the restaurant out of curiosity and only later formed the intent to steal, and because the prosecutor so emphatically told the jury that it did not matter when the intent was formed. It is important to stress that Pushruk and his companions committed a trespass and were illegally on the premises immediately upon entering through the back door. This was not a case in which they arguably entered legally, but thereafter remained unlawfully.

The judgment of the superior court is REVERSED and this case is REMANDED for a new trial.