Clynton D. **BUTTS**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–7678.

Court of Appeals of Alaska.

Aug. 23, 2002.

---

Susan M. Carney, Assistant Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

1. AS 11.41.510(a)(1).

*OPINION*

COATS, Chief Judge.

A jury convicted Clynton D. Butts of robbery in the second degree [1] for forcibly taking a woman's purse from her. He appeals his conviction, arguing that the trial court erred in refusing to dismiss the indictment against him and that his sentence is excessive. We affirm.

Butts was indicted on January 20, 1999, for robbery in the second degree. The grand jury and trial testimony described the basis of the charge as follows: Butts accosted Cheryl Joens in the parking lot of the Bentley Mall Safeway in Fairbanks at about 10:30 p.m. on January 14, 1999. Joens heard footsteps, saw Butts running toward her, and felt him grab her purse. She screamed and struggled with Butts over her purse. She ended up on the ground, still struggling with Butts over her purse. After it was clear Butts was not going to give up the purse, Joens allowed Butts to pull the purse from her grasp in fear he would attack her with a weapon. Butts took her purse and ran away.

Joseph Fields was in the parking lot during the incident. He heard Joens scream, turned, saw Butts tackle her, and ran to help Joens. He yelled at Butts to stop. When Butts took the purse and ran, Fields chased him—first on foot, then in his car.

Mark Herz, also in the parking lot during the incident, saw the others and chased Butts in his vehicle. He and Fields followed Butts, who dropped the purse while running through a number of neighboring parking lots to the Back Door Lounge.

Butts entered the Back Door Lounge and, after meeting with another man, ran through the parking lot to nearby woods. The Fairbanks Police Department and Alaska State Troopers responded. Trooper Scott Johnson used a police dog to track Butts to a snow berm where he was hiding. Butts surrendered, stating that he had taken the purse because he owed $200 on a drug debt and that the man he owed the debt had a gun. Butts later told Fairbanks Police Detective Aaron Ring that he had taken the purse because he needed drug money.

Butts's first trial ended in a hung jury. But in a second trial, conducted by Superior Court Judge pro tem Raymond M. Funk, a jury convicted Butts of robbery in the second degree.

Robbery in the second degree is a class B felony that carries a four-year presumptive term of imprisonment for a second felony offender and a six-year presumptive term of imprisonment for a third felony offender.[2] Judge Funk found that Butts had two prior felony convictions from Oklahoma that qualified as prior felony offenses for purposes of presumptive sentencing. He therefore concluded that Butts was a third felony offender subject to a six-year presumptive term. Judge Funk found that two aggravators applied to Butts's sentence: that Butts had a prior criminal history that included "conduct involving aggravated or repeated instances of assaultive behavior" and that Butts was "on release under AS 12.30.020 or 12.30.040 for another felony charge or conviction or misdemeanor charge or conviction having assault as a necessary element" at the time he committed this offense.[3] Judge Funk sentenced Butts to an aggravated presumptive term of eight years with two years suspended and placed him on probation for a period of five years following his release from confinement.

*Butts's challenge to his indictment: Did he commit a taking by "force"?*

After Butts was indicted for robbery, he asked the superior court to dismiss the indictment on the ground that the prosecutor failed to instruct the grand jurors on the statutory definition of "force." Alaska Statute 11.81.900(b)(26) defines "force" as

> any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement[.]

Butts asserted that the grand jurors needed special instruction on this issue because the statutory definition of "force" differs significantly from the normal, everyday definition and because, given the facts of his case, the

grand jurors reasonably might have concluded that Butts did not use "force" when he took the purse from Joens.

As explained above, the state presented evidence that Butts ran up to Joens and took hold of her purse. When Joens refused to let go of her property, Butts engaged in a tugging match with her, attempting to wrest the purse from her grasp. During this struggle, Joens fell to the ground. Joens believed that Butts would injure her if she did not relinquish the purse, so she let go.

Butts concedes that, under the everyday meaning of "force," he took Joens's purse by force. Butts argues, however, that if the grand jurors had understood that Alaska law defines "force" in a specialized, limited way, they might have refused to indict him—because, under the above facts, one reasonably could conclude that Butts did not effect any bodily impact on Joens, nor did he threaten her with bodily impact.

Butts's argument runs contrary to the generally accepted law on this issue. The dividing line between "purse snatching" (*i.e.*, theft from the person) and robbery is described in *Substantive Criminal Law* by LaFave and Scott:

> The line between robbery and larceny from the person ... is not always easy to draw. The "snatching" cases, for instance, have given rise to some dispute. The great weight of authority, however, supports the view that there is not sufficient force to constitute robbery [if] ... the thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking. On the other hand, when the owner, aware of an impending snatching, resists it, or when[ ] the thief's first attempt ... to separate the owner from his property [is ineffective and] a struggle ... is necessary before the thief can get possession [of the property], there is enough force to make the taking robbery.[4]

---

**2.** AS 12.55.125(d)(2).

**3.** AS 12.55.155(c)(8), (12).

**4.** 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 8.11(d)(1), p. 445 (1986) (citation omitted); *see also* Peter G. Guthrie, Annotation, *Purse Snatching as Robbery or Theft*, 42 A.L.R.3d 1381, 1383 (1972).

Under this general rule, the sudden snatching of a purse, briefcase, or satchel will be only a theft. But if "a struggle ensues, where the victim is knocked down, or where the victim is put in fear," the crime will be robbery.[5] It is the act of "wresting" or "wrenching" (as opposed to merely "grabbing" or "snatching") that makes the offense a robbery.[6] "[E]ven [a] slight tug on the arm by the purse thief who must use force to wrench the purse from the arm of the victim" is enough to convert the theft to a robbery.[7]

Thus, in *State v. Williams*,[8] the Connecticut Supreme Court affirmed a robbery conviction arising from a purse-snatching in which the victim suffered bruises on her shoulder.[9] The court concluded that, based on these bruises, the jury reasonably could have inferred that the victim offered resistance to the force exerted by the thief in attempting to wrench the shoulder strap from her—a resistance that converted the purse-snatching into a robbery.[10] Other courts have ruled that the resistance needed to convert a theft to robbery can arise simply from the fact that the victim's property was "so attached to the victim's person or clothing as to create resistance to the taking." [11]

However, even though these cases reject Butts's argument that his conduct did not amount to robbery, they are not conclusive authority on this question. Many of these states have definitions of robbery and force that differ from Alaska's. In particular, very few jurisdictions have definitions of "force" that restrict this term to "bodily impact," "restraint," and "confinement."

■ Under Alaska law, the ultimate issue is whether Butts effected a "bodily impact" on Joens when he grabbed her purse and tried to wrest it from her while she held on and resisted his efforts. We therefore must decide whether the phrase "bodily impact" includes indirect contacts such as this—instances where the defendant does not actually touch the victim but, instead, exerts impact on property that is attached to the victim or that the victim is holding onto. For the reasons stated below, we conclude that "bodily impact" does include such indirect contacts.

■ We reach this conclusion, in part, by analogy to the civil tort of battery, which consists of the intentional unlawful touching of another. This tort can be committed through an indirect touching of the victim—*i.e.*, by touching the victim's clothing or articles of property connected to the victim's body. This concept is explained in *Restatement (Second) of Torts:*

> Since the essence of the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his [or her] person and not in any physical harm done to his [or her] body, it is not necessary that the plaintiff's actual body be disturbed. Unpermitted and intentional contacts with anything so connected with the body as to be customarily regarded as part of the other's person and therefore as partaking of its inviolability [are] actionable as an offensive contact with [the victim's] person. There are some things such as clothing or a cane or, indeed, anything directly grasped by the hand which are so intimately connected with one's body as to be universally regarded as part of the person.[12]

5.  *Winn v. Commonwealth*, 21 Va.App. 179, 462 S.E.2d 911, 913 (1995).

6.  *See State v. Sein*, 124 N.J. 209, 590 A.2d 665, 669–70 (1991).

7.  *Mackbee v. State*, 575 So.2d 16, 36 (Miss.1990) (quoting *Commonwealth v. Brown*, 506 Pa. 169, 484 A.2d 738, 742 (1984)).

8.  202 Conn. 349, 521 A.2d 150 (1987), *overruled on other grounds, Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

9.  *Id.* at 155–56.

10.  *Id.* at 155.

11.  *People v. Brooks*, 202 Ill.App.3d 164, 147 Ill. Dec. 519, 559 N.E.2d 859, 862 (1990), *abrogated on other grounds, People v. Williams*, 149 Ill.2d 467, 174 Ill.Dec. 829, 599 N.E.2d 913, 917 (1992); *accord, Raiford v. State*, 52 Md.App. 163, 447 A.2d 496, 500 (1982), *aff'd in pertinent part,* 296 Md. 289, 462 A.2d 1192 (1983).

12.  *Restatement (Second) of Torts* § 18 Cmt. C (1965).

Thus, in *Fisher v. Carrousel Motor Hotel, Inc.*,[13] the defendant snatched a patron's dinner plate from his hands without touching the patron.[14] The Texas Supreme Court held that the intentional grabbing of the patron's plate constituted battery.[15] Also, in *Morgan v. Loyacomo*,[16] the Mississippi Supreme Court held that the defendant's act of forcibly seizing a package from under a customer's arm constituted battery.[17]

█ This same principle applies in prosecutions for criminal battery. Direct physical contact between the defendant and the victim is not required; the crime can be committed by the indirect application of unlawful force.[18]

For example, in *State v. Gammil*,[19] the New Mexico Court of Appeals held that the defendant committed the crime of aggravated battery in circumstances much like Butts's case: the defendant grabbed the victim's purse and then, attempting to wrest control of the purse, spun around—with the result that the victim was thrown to the ground.[20] In *State v. Ortega*,[21] the court held that a defendant could be convicted of battery upon a police officer even if the jury believed the defendant's testimony that he merely grabbed the officer's flashlight and knocked it from the officer's hand.[22] And in *Nash v. State*,[23] the Florida Court of Appeals held that a criminal battery is committed not only by the intentional unlawful touching of the victim's person but also the touching of "an object that has such an intimate connection to the person as to be regarded as a part or extension of the person, such as clothing or an object held by the person."[24] The court concluded that the defendant was properly convicted of battery when he "intentionally touched the victim's closely held purse against her will."[25]

█ Neither the legislative history of our robbery statute nor the legislative history of our statutory definition of "force" gives any indication that our legislature intended to depart from these established rules of criminal law. We therefore construe the term "bodily impact" in AS 11.81.900(b)(26) to include indirect bodily impacts such as the one presented in this case. Butts effected a "bodily impact" on Joens when he attempted to wrest Joens's purse from her grasp because she actively resisted his effort. He therefore took the purse by "force" as that term is defined in AS 11.81.900(b)(26).

Having construed AS 11.81.900(b)(26) in this way, we conclude that Butts suffered no prejudice from the failure of the prosecutor to give the grand jury a special instruction on the statutory definition of "force." The evidence clearly established that Butts used "force" as we now have defined it. Indeed, the grand jury might have been led astray by the statutory definition of "force" unless it received a supplemental instruction that "bodily impact" includes the type of indirect bodily impact presented here.

### Prior felony convictions

Butts contends that Judge Funk erred in finding that his prior Oklahoma felony convictions qualified as prior felony convictions for purposes of presumptive sentencing. A prior conviction from another jurisdiction qualifies as a prior felony conviction for purposes of presumptive sentencing under AS 12.55.145(a)(1)(B) if it has "elements similar

13. 424 S.W.2d 627 (Tex.1967).

14. *Id.* at 629.

15. *Id.* at 629–30.

16. 190 Miss. 656, 1 So.2d 510 (1941).

17. *Id.* at 511.

18. *See generally* LaFave & Scott, *supra* note 4, § 7.15(b), at 303.

19. 108 N.M. 208, 769 P.2d 1299 (App.1989), *overruled on other grounds, State v. Fuentes*, 119 N.M. 104, 888 P.2d 986, 988 (App.1994).

20. *Id.* at 1301.

21. 113 N.M. 437, 827 P.2d 152 (App.1992).

22. *Id.* at 154–56.

23. 766 So.2d 310 (Fla.Dist.Ct.App.2000).

24. *Id.* at 311.

25. *Id.; see also People v. Harris*, 65 Cal.App.3d 978, 135 Cal.Rptr. 668, 674 (1977) (holding that indirect use of force constituted robbery when defendant tried to push a jewelry case lid open while the victim tried to hold it shut).

to those of a felony defined as such under Alaska law at the time the offense was committed[.]" Our prior case law interprets this statute to require us to focus on the similarity of the elements of the out-of-state and Alaska offenses, not on the facts of the defendant's prior felony.[26] An out-of-state statute may be similar to its Alaska counterpart even though some conduct is penalized by the out-of-state statute that is not penalized by the Alaska statute.[27] Alaska Statute 12.55.145(a)(1)(B) only requires similarity between the two offenses, not that they be identical.[28] If the out-of-state statute is more narrowly defined—if it criminalizes less conduct than its Alaska counterpart—the defendant's prior conviction will qualify as a prior felony conviction.[29]

■ Butts was convicted under Oklahoma's second-degree burglary statute, which states:

Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.[30]

Alaska defines burglary in the second degree as:

(a) A person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime in the building.[31]

The elements of the Alaska and Oklahoma statutes can be illustrated as follows:

| Alaska's second-degree burglary elements: | Oklahoma's elements under which Butts was convicted: |
|---|---|
| a person | a person |
| 1) enters or remains unlawfully | 1) breaks and enters |
| 2) in a building | 2) any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device |
| 3) with the intent to commit a crime in the building.[32] | 3) with intent to steal any property therein or to commit any felony.[33] |

The first and third elements of the Oklahoma statute appear to generally be more restrictive than the Alaska statute (the Alaska statute appears to criminalize conduct which might not be criminal under the Oklahoma statute). It is only the second element in the Alaska statute that is apparently more restrictive than the Oklahoma statute. But Alaska defines "building" broadly.[34] Alaska Statute 11.81.900(b)(4) states:

---

26. See *Harlow v. State,* 820 P.2d 307, 309 (Alaska App.1991).

27. See *State v. Delagarza,* 8 P.3d 362, 367–68 (Alaska App.2000).

28. See *Delagarza,* 8 P.3d at 367–68.

29. See *id.* at 366.

30. Okla. Stat. tit. 21, § 1435 (1983).

31. AS 11.46.310(a).

32. AS 11.46.310(a).

33. Okla. Stat. tit. 21, § 1435.

34. See AS 11.81.900(b)(4); *see also Austin v. State,* 883 P.2d 992, 993 (Alaska App.1994); *Pushruk v. State,* 780 P.2d 1044, 1047 (Alaska App.1989) (restaurant inside of hotel was separate "building" for purpose of burglary statute); *Wesolic v. State,* 837 P.2d 130, 132 (Alaska App. 1992) (locked bedrooms and garage in home constituted separate "building" for purposes of burglary conviction even though defendant rented a bedroom in the home). *But see Arabie v. State,* 699 P.2d 890, 893 (Alaska App.1985) (a restricted area inside of a building open to the public is not a separate "building" for purposes of burglary statute).

"building", in addition to its usual meaning, includes any propelled vehicle or structure adapted for overnight accommodation of persons or for carrying on business; when a building consists of separate units, including apartment units, offices, or rented rooms, each unit is considered a separate building[.]

Alaska Statute 11.81.900(b)(49) states:

"propelled vehicle" means a device upon which or by which a person or property is or may be transported, and which is self-propelled, including automobiles, vessels, airplanes, motorcycles, snow machines, all-terrain vehicles, sailboats, and construction equipment[.]

Therefore, even though the Alaska burglary statute only apparently covers the entry into buildings on its face, given the broad definition of building and the broad definition of vehicle, we conclude that the Alaska statute criminalizes entry into almost every building and conveyance listed in the Oklahoma statute. In our opinion, the fact that the Oklahoma statute criminalizes entry into vending machines does not make the statute dissimilar. As stated earlier, the fact that Oklahoma's statute prohibits conduct not covered by Alaska's statute does not bar the conclusion that the statutes are similar.[35] Alaska Statute 12.55.145(a)(1)(B) only requires similarity between the statutes, not that they be identical.[36] We conclude that the Oklahoma statute criminalizing burglary in the second degree is sufficiently similar to the Alaska statute criminalizing burglary in

Alaska's third-degree assault elements:

1) recklessly

2) places another person in fear of imminent serious physical injury or causes physical injury to another person

3) by means of a dangerous instrument.[38]

Both statutes criminalize assaults with dangerous weapons. It generally appears

the second degree for Butts's Oklahoma burglary conviction to qualify as a prior felony conviction under AS 12.55.145.

■ Butts also argues that Judge Funk erred in finding that his Oklahoma conviction for assault and battery with a dangerous weapon qualified as a prior felony conviction for purposes of presumptive sentencing.

The Oklahoma assault and battery with a dangerous weapon statute under which Butts was convicted stated:

Every person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault, battery, or assault and battery upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person ... is guilty of a felony[.] [37]

Alaska's assault in the third degree statute, AS 11.41.220, states:

(a) A person commits the crime of assault in the third degree if that person

(1) recklessly

(A) places another person in fear of imminent serious physical injury by means of a dangerous instrument;

(B) causes physical injury to another person by means of a dangerous instrument[.]

The elements of Alaska's statute as compared to Oklahoma's statute are as follows:

Oklahoma's elements under which Butts was convicted:

1) intent to do bodily harm

2) commits any assault, battery, or assault and battery upon the person of another

3) with any sharp or dangerous weapon.[39]

**35.** *See Delagarza,* 8 P.3d at 367.

**36.** *See id.* at 367–68.

**37.** Former Okla. Stat. tit. 21, § 645 (1983).

**38.** AS 11.41.220.

**39.** Former Okla. Stat. tit. 21, § 645.

that anyone convicted under the Oklahoma statute would also violate the Alaska statute. We can conceive of one exception. Under the Oklahoma statute, a person conceivably could threaten another person with a dangerous weapon with intent to do bodily harm but not strike the victim or place the victim in fear of imminent serious physical injury.[40] However, that seems to us to be a small set of cases. If a person attacks another with a sharp or dangerous weapon with the intent to do bodily harm, it seems unlikely that the victim would not either be placed in fear of imminent serious physical injury or would not be injured in some way. We accordingly conclude that Judge Funk did not err in determining that the elements of the Oklahoma and Alaska statutes were sufficiently similar so that Butts's prior Oklahoma assault conviction qualified as a prior felony conviction for purposes of presumptive sentencing.

### Merger of prior convictions

Butts argues that Judge Funk erred in concluding that Butts's Oklahoma burglary and assault convictions did not merge for purposes of presumptive sentencing. The resolution of this issue turns on an interpretation of AS 12.55.145(a)(1)(C). That statute provides that separate convictions arising "out of a single, continuous criminal episode during which there is no substantial change in the nature of the criminal objective" constitute a single conviction.[41] The statute does not allow the convictions to merge if the defendant received consecutive sentences.[42] The statute also provides that "offenses committed while attempting to escape or avoid detection or apprehension after the commission of another offense are not part of the same criminal episode or objective[.]"[43] The commentary to the criminal code provides some examples:

> The phrase "single, continuous criminal episode" is intended to limit the applicability of this provision to a single criminal

event out of which a number of offenses could be charged. For example, the breaking and entering of a building with the intent to commit theft, which can be charged as burglary, and the taking of property in the building which can be charged as theft. In such an instance, convictions for both burglary and theft would be considered a single conviction under this section. However, the commission of three burglaries involving three buildings in a single day, would not be considered part of a "single, continuous criminal episode".

Similarly, the phrase "substantial change in the nature of the criminal objective" is intended to limit the applicability of the provision to a single criminal objective. In the preceding example, the criminal objective is to obtain property and the breaking and entering is an incident of that objective. However, assume that the defendant takes a hostage to facilitate his flight, and then decides to commit a sexual assault on the hostage. He is subsequently convicted of burglary, theft, kidnapping and sexual assault. In such a circumstance the defendant would have been convicted of three prior offenses for purposes of this section, burglary-theft, kidnapping and sexual assault. Additionally, the last clause of subsection (a)(3) provides that an offense committed while attempting to escape or avoid detection or apprehension after the commission of another offense is not included within the provision and is to be considered an additional conviction for purposes of presumptive sentencing.[44]

Butts's Oklahoma convictions arose from his breaking into the home of Paul Caplinger. At some point during the burglary, Butts hit Caplinger with the ceramic top to a toilet water reservoir, causing serious injuries to Caplinger. Butts argued to Judge Funk that he committed the assault merely to facilitate his theft of the property during the burglary. He argued that therefore "there was no sub-

40. Former Okla. Stat. tit. 21, § 645.

41. AS 12.55.145(a)(1)(C).

42. AS 12.55.145(a)(3)(C).

43. *See id.*

44. Commentary on the Alaska Revised Criminal Code, 2 Senate Journal Supp. No. 47 at 156–59 (June 12, 1978).

stantial change in the nature of the criminal objective" of his offenses.

Butts had the burden to prove by clear and convincing evidence that the convictions should merge.[45] The facts of Butts's Oklahoma felonies are subject to two interpretations. But regardless, the offenses would not merge under either interpretation. Butts entered Caplinger's residence with the intent to steal property. He either assaulted Caplinger "while attempting to escape or avoid detection or apprehension" of the burglary or he committed the assault for another purpose and the assault constituted a "substantial change in the nature of the criminal objective" of the burglary.[46] Neither interpretation of Butts's prior Oklahoma felonies would qualify as a single conviction under AS 12.55.145. We therefore conclude that Judge Funk did not err in treating Butts's prior Oklahoma assault convictions as separate convictions for purposes of presumptive sentencing.

### Aggravating factor

■ Butts contends that Judge Funk erred in finding the aggravating factor that Butts was on bail release "for another felony charge or conviction or for a misdemeanor charge or conviction having assault as a necessary element[.]"[47] According to the presentence report, in 1998 Butts was charged with assault in the fourth degree and concealment of merchandise. Butts's current robbery offense occurred on January 14, 1999. The presentence report reflects that on June 21, 1999, Butts was convicted of concealment of merchandise and the assault in the fourth degree charge was dismissed. It follows that Butts was on release on the assault charge at the time he committed the robbery offense. Judge Funk was entitled to rely on the information in the presentence report unless Butts presented substantial evidence or made a testimonial denial that the

information in the report was inaccurate.[48] Butts made no such presentation. He merely argues that the information in the presentence report was insufficient to establish the aggravating factor by clear and convincing evidence. We conclude that Judge Funk was entitled to rely on the information in the presentence report and conclude that he did not err in finding the aggravating factor.

### Mitigating factors

■ Butts proposed three mitigating factors at sentencing: AS 12.55.155(d)(3) (committed the offense under duress), (d)(9) (least serious conduct), and (d)(13) (consistently minor crimes). Judge Funk rejected all three mitigating factors, finding that Butts failed to prove them by clear and convincing evidence. This court reviews Judge Funk's decisions under the clearly erroneous standard.[49]

### a) AS 12.55.155(d)(3) (committed the offense under duress)

■ In support of this mitigating factor, Butts relied on a statement he made immediately after being caught that he owed a man $200 for drugs, the man had a gun, and he forced Butts to steal the money so Butts could pay him back. But when Butts was interviewed by the police later, he stated that he was a crack cocaine addict and had taken the purse to obtain money so he could buy more crack cocaine. Even if we assume that Butts's first statement, if established as true, could support a finding that he acted under duress, Judge Funk could reasonably conclude that Butts's later statement undermined the credibility of his first statement. Judge Funk found that the only thing that he was convinced of was that Butts had a serious cocaine problem and was seeking money so that he could purchase drugs. He concluded that this was insufficient to establish the duress mitigator. This finding is not clearly erroneous.

---

45. AS 12.55.145(d).

46. AS 12.55.145(a)(1)(C), (a)(3)(C).

47. AS 12.55.155(c)(12).

48. *See Evan v. State*, 899 P.2d 926, 930 (Alaska App.1995) (sentencing judge entitled to rely on

victim's account in presentence report unless defendant makes a testimonial denial or otherwise presents substantial information that the report might be inaccurate).

49. *See Lepley v. State*, 807 P.2d 1095, 1099 n. 1 (Alaska App.1991).

*b) AS 12.55.155(d)(9) (least serious conduct)*

 Butts argued that his robbery offense was among the least serious conduct included in the definition of that offense because he had used little or no force to take Joens's purse. Judge Funk found that Butts's robbery offense was not a least serious offense but was somewhere in the middle range of robbery offenses. In rejecting the mitigating factor, Judge Funk pointed out that the robbery took place in a parking lot at night and that Butts used enough force so that Joens was knocked to the ground. We conclude that Judge Funk's findings are not clearly erroneous.

*c) AS 12.55.155(d)(13) (the facts surrounding the commission of the offense and any previous offenses by the defendant establish that the harm caused by the defendant's conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment)*

Judge Funk rejected this mitigating factor on several grounds. First, as a matter of law, Judge Funk was required to reject this mitigating factor once he rejected the mitigating factor that Butts's offense was among the least serious robbery offenses.[50] Furthermore, Judge Funk also concluded that Butts's current robbery offense and his prior record suggested that the mitigating factor would not apply even if he were not precluded from finding the mitigating factor as a matter of law. Our review of the record supports Judge Funk's conclusion.

*Excessive sentence*

Lastly, Butts argues that the sentence Judge Funk imposed is excessive. But the sentence Judge Funk imposed, eight years with two years suspended, was the presumptive sentence (six years) plus two suspended years. Judge Funk was required to impose the presumptive sentence by law so it is difficult to conclude that the sentence is excessive. In sentencing Butts, Judge Funk pointed to the seriousness of Butts's current offense and his extensive prior record. He concluded that Butts's offenses arose from drug and alcohol abuse, and he made provisions for Butts to receive treatment for his substance abuse. Judge Funk's sentencing remarks support the sentence he imposed. We conclude that the sentence is not clearly mistaken.[51]

*Conclusion*

We reject all of Butts's claims of error. We accordingly AFFIRM his convictions and sentence.

---

**50.** *See Jackson v. State,* 890 P.2d 587, 597 (Alaska App.1995).

**51.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).