United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 25, 2007**

Charles R. Fulbruge III
Clerk

REVISED JULY 17, 2007
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-41426

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN JOSE HERRERA-MONTES,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:06-CR-257
--------------------

Before HIGGINBOTHAM, DAVIS, and WIENER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Defendant Juan Jose Herrera-Montes pleaded guilty to reentering the United States following deportation. In sentencing Herrera, the district court levied a 16-level increase after concluding that Ortega's previous Tennessee conviction for aggravated burglary, TENN. CODE ANN. § 39-14-403, was a "crime of violence" under U.S.S.G. § 2L1.2. Herrera challenges that conclusion, which we review de novo. See United States v. Dominguez-Ochoa, 386 F.3d 639, 641 (5th Cir. 2004).

U.S.S.G. § 2L1.2 provides for a 16-level increase if the defendant was deported following a "crime of violence." The commentary to § 2L1.2 defines "crime of violence" as either an

enumerated felony, including "burglary of a dwelling," or a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." As they did below, the parties contest only whether Ortega's prior conviction was the enumerated felony of "burglary of a dwelling" under the categorical approach. See Dominguez-Ochoa, 386 F.3d at 642-46. In answering that question, we look to the "generic, contemporary" meaning of burglary of a dwelling, employing a "common sense approach." See United States v. Santiesteban-Hernandez, 469 F.3d 376, 378-79 (5th Cir. 2006).

Here, Herrera was convicted of "aggravated burglary," which is "burglary" as defined in TENN. CODE ANN. § 39-14-402, of a "habitation." § 39-14-403. Section 39-14-402 provides that:

> (a) A person commits burglary who, without the effective consent of the property owner:
>
> (1) Enters a building other than a habitation (or any portion therefore) not open to the public, with intent to commit a felony, theft or assault;
>
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;
>
> (3) Enters a building and commits or attempts to commit a felony, theft, or assault; or
>
> (4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Herrera's indictment charged that he "did unlawfully, feloniously, and recklessly enter a habitation without the effective consent of the property owner...and commit theft." Herrera argues that the

indictment tracks the language of (a)(3), which can be committed even if, at the time of unlawful entry, he had no intent to commit a crime. The Government agrees. And such an intent, he argues, is required under United States v. Taylor, 495 U.S. 575 (1990), and is consistent with the generic definition of burglary as attested to by the Model Penal Code and Black's Law Dictionary.

As we more fully describe in our companion case, United States v. Ortega-Gonzaga, ___ F.3d ___ (5th Cir. 2007), Taylor's definition of "burglary," aside from the structures in which an entry can occur, controls the definition of "burglary of a dwelling" under the Guidelines. And Taylor requires that the defendant intend to commit a crime at the time of unlawful entry or remaining in, as do the Model Penal Code § 221.1 and BLACK'S LAW DICTIONARY 197-98 (6th ed. 1990).[1] Consequently, under the categorical approach, Herrera's prior conviction was not "burglary of a dwelling," thus not a crime of violence, because his statute of conviction did not require such intent.[2] For example, teenagers

---

[1] See United States v. Bonat, 106 F.3d 1472, 1475 (9th Cir. 1997) (concluding that a burglary statute covering someone who enters a store and only then decides to shoplift is broader than Taylor "burglary" because the intent must exist during the entry) (that statute also covered lawful entry, another reason it was broader than Taylor "burglary," see Ortega-Gonzaga, ___ F.3d at ___ & n.5). Of course, if the intent could be formed anytime, then every crime committed after an unlawful entry or remaining in would be burglary. Relatedly, one who lawfully enters a building does not "unlawfully remain" just because he later commits a crime, parlaying the crime into burglary because now intent and unlawful remaining coincide - a shoplifter, for instance, who enters lawfully but intending to steal does not "unlawfully remain" when he commits the theft.

[2] The plain text of § 39-14-402(a)(3) does not require such intent, as a Tennessee court has recognized. See State v. Wesemann, 1995 WL 605442, at *2 (Tenn. Crim. App. Oct. 16, 1995) (holding that § 39-14-402(a)(3) "requires only that a [crime] be committed or attempted once the perpetrator enters the building....Criminal intent does not have to occur either prior to or

who unlawfully enter a house only to party, and only later decide to commit a crime, are not common burglars.[3]

The Government argues that this court's opinion in United States v. Garcia-Mendez, 420 F.3d 454 (5th Cir. 2005), controls here. In Garcia-Mendez, we concluded that the Texas burglary statute, TEX. PENAL CODE § 30.02, which is in relevant part identical to the Tennessee statute here, proscribed "burglary of a dwelling." Garcia-Mendez, however, was charged and convicted under TEX. PENAL CODE § 30.02(a)(1), which requires entry with an intent to commit a crime, as the court in Garcia-Mendez recognized.[4] It did not address § 30.02(a)(3), which requires no such intent, see Flores v. State, 902 S.W.2d 618, 620 (Tex. App. - Austin 1995). Hence Garcia-Mendez never addressed the issue here, and the Government points to no cases where § 30.02(a)(3) was at issue.

SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.

---

simultaneous with the entry....").

[3] One could argue that the teenagers intended, by entering, to commit the crime of trespass, but that bootstrapping is not countenanced in the common meaning of "burglary." A better example, albeit one where the entry was not unlawful: in Wesemann, the defendant argued that the victim always brought him something to drink when he was moving her lawn, but that because she was away once when he mowed her lawn, she left him a note telling him to go inside the house to get a drink. Once inside, intending only to get a drink, he continued, he saw some rings and stole them. The court affirmed the sentence, but only because § 39-14-402(a)(3) required no intent to commit a crime at the time of entry.

[4] The record in Garcia-Mendez shows that the defendant was indicted with entry with an intent to commit sexual assault and plead guilty to entry with an intent to assault.