# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

<blockquote><em>Plaintiff-Appellee,</em></blockquote>

v.

FRANCISCO BONILLA,

<blockquote><em>Defendant-Appellant.</em></blockquote>

No. 11-4765

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:10-cr-00772-WDQ-1)

Argued: May 18, 2012

Decided: July 17, 2012

Before TRAXLER, Chief Judge, and GREGORY and
DIAZ, Circuit Judges.

---

Affirmed by published opinion. Judge Diaz wrote the major-
ity opinion, in which Judge Gregory joined. Chief Judge
Traxler wrote a dissenting opinion.

---

**COUNSEL**

**ARGUED:** Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Benjamin M. Block, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

DIAZ, Circuit Judge:

After he pleaded guilty to illegal reentry, Francisco Bonilla received an enhanced sentence based on his prior Texas conviction for burglary of a habitation. Bonilla argues that the district court erred in applying the enhancement because his state conviction under Texas Penal Code section 30.02(a)(3)—which provides that "[a] person commits [burglary] if, without the effective consent of the owner, the person . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault"—does not satisfy the definition of generic burglary under *Taylor v. United States*, 495 U.S. 575 (1990). We disagree and affirm the judgment of the district court.

I.

Bonilla pleaded guilty to a one-count indictment charging him with knowingly entering the United States without the consent of the Attorney General of the United States after having been previously excluded, deported, or removed, in violation of 8 U.S.C. § 1326. The presentence report ("PSR") noted that Bonilla's base offense level of eight should be increased by sixteen levels, "[s]ince [Bonilla] ha[d] previ-

ously been convicted of a crime of violence," pursuant to U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A). J.A. 120. The offense triggering the enhancement was Bonilla's May 8, 1992 conviction in Texas state court for burglary of a habitation.[1]

Bonilla objected to the sentencing enhancement, contending that his Texas conviction did not qualify as a crime of violence because it did not satisfy the elements of generic burglary required by *Taylor*. Specifically, Bonilla argued that because he did not have "the requisite intent to commit a crime" "at the time" that he illegally entered the dwelling, he did not commit generic burglary. *Id.* 65.

The district court rejected Bonilla's argument. Bonilla, the court found, was convicted under section 30.02(a)(3) of the Texas Penal Code, which provides that "[a] person commits [burglary] if, without the effective consent of the owner, the person . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." Looking to the charging document—which specified that Bonilla "knowingly and intentionally enter[ed] a habitation without the effective consent of . . . the owner, and therein attempted to commit and committed theft," J.A. 36—the court noted that "theft or attempted theft would require intent," *id.* 77, and that the intent "has to be formed at some point before leaving the habitation, because the charge is within the habitation," *id.* 80. Thus, the court concluded that Bonilla's conviction met the elements of generic burglary under *Taylor* and qualified as a crime of violence under § 2L1.2(b)(1)(a). Applying the sixteen-level sentencing enhancement, the court calculated an advisory Guidelines range of thirty-seven to forty-six months, and sentenced Bonilla to thirty-seven months' imprisonment.[2] Bonilla timely appealed.

---

[1]As detailed in the judgment from the Texas conviction, Bonilla pleaded guilty to this offense.

[2]The district court also rejected Bonilla's argument for a downward variance based on his personal history and circumstances, but this decision is not challenged on appeal.

## II.

Whether a prior conviction qualifies as a "crime of violence" is a legal question we review de novo. *United States v. Jenkins*, 631 F.3d 680, 682 (4th Cir. 2011). Under U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A), a defendant convicted of illegal reentry is subject to a Guidelines enhancement if prior to his removal or deportation he had been convicted of a "crime of violence." Application note 1(B)(iii) to § 2L1.2 defines a "crime of violence" as one of several enumerated offenses, including "burglary of a dwelling," or an offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another."

## A.

In *Taylor*, the Supreme Court sought to provide "some uniform definition [of burglary] independent of the labels employed by the various States' criminal codes." 495 U.S. at 592. Specifically, the Court considered the meaning of "burglary" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The ACCA provides a sentencing enhancement for a conviction for unlawful possession of a firearm under 18 U.S.C. § 922(g) if the defendant "has three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). A "violent felony," in turn, includes "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is *burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B)(ii) (emphasis added).[3]

---

[3]Although *Taylor* considered whether a conviction qualified as a "violent felony" under the ACCA, we apply its analysis to the "crime of violence" definition as well—with the additional requirement that a burglary qualifying as a "crime of violence" must involve a dwelling. *See United States v. Herrera-Montes*, 490 F.3d 390, 392 (5th Cir. 2007) ("*Taylor*'s

*Taylor*'s search for a uniform definition of "burglary" stemmed from Congress's deletion of the same in 1986 from the ACCA. In the Armed Career Criminal Act of 1984, "burglary" was defined as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." *Taylor*, 495 U.S. at 581 (internal quotations omitted). Without explanation, Congress in 1986 excised this definition, while retaining burglary as a predicate offense under the ACCA.

Faced with this legislative hole, the Court in *Taylor* noted that Congress had "singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential for harm to persons." *Id.* at 588. As the Court explained, "[t]he fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Id.* "And the offender's own awareness of this possibility," the Court added, "may mean that he is prepared to use violence if necessary to carry out his plans or to escape." *Id.* Further, because "Congress apparently thought that all burglaries serious enough to be punishable by imprisonment for more than a year . . . shared this potential for violence and . . . were likely to be committed by career criminals," Congress did not "limit the predicate offense to some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the building is occupied, or the crime occurs at night." *Id.*

definition of 'burglary,' . . . controls the definition of 'burglary of a dwelling' under the Guidelines."); *United States v. Wenner*, 351 F.3d 969, 973 (9th Cir. 2003) ("[T]he most logical and sensible reading of the Guidelines . . . is to construe 'burglary of a dwelling' as the *Taylor* definition of burglary, with the narrowing qualification that the burglary occur in a dwelling").

Finding it "implausible" that Congress would have left the meaning of "burglary" under § 924(e) to the variances of the states' criminal codes, *id.* at 590, the Court concluded that "burglary" "must have some uniform definition" separate from the idiosyncrasies of the state codes, *id.* at 592. In its search for uniformity, the Court rejected a definition of burglary tied to the common law, noting that the "contemporary understanding" of burglary was far removed from its common law counterpart. *Id.* at 593. That is, although " '[b]urglary was defined by the common law to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony'," *id.* at 580 n.3 (citation omitted), most states had long since "expanded this definition to include entry without a 'breaking,' structures other than dwellings, offenses committed in the daytime, entry with intent to commit a crime other than a felony, etc.," *id.* at 593.

Next, the Court rejected a definition that required "intent to engage in conduct constituting a Federal or State offense that has as an element . . . conduct that presents a serious risk of physical injury to another." *Id.* at 596 (internal quotations omitted). The Court determined that if Congress intended to reach only this "subclass" of burglaries, the inclusion of "burglary" in § 924(e)(2)(B)(ii) was superfluous, as the statute separately included any offense that " 'involves conduct that presents a serious potential risk of physical injury to another.' " *Id.* at 597 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

A more rational explanation for specifically and separately including burglary as a predicate offense, said the Court, was that "Congress thought that certain general categories of property crimes—namely burglary, arson, extortion, and the use of explosives—so often presented a risk of injury to persons, or were so often committed by career criminals, that they should be included" even though the statutory elements of such offenses do not "necessarily involve the use or threat of force against a person." *Id.* Moreover, the lack of qualifying language in § 924(e)(2)(B)(ii) suggested that Congress was con-

cerned "not only [with] aggravated burglaries, but also run-of-the-mill burglaries involving an unarmed offender, an unoccupied building, and no use or threat of force." *Id.*

In sum, the Court declined to limit the term "burglary" to "a special subclass of burglaries, either those that would have been burglaries at common law, or those that involve especially dangerous conduct." *Id.* at 598. Rather, the Court determined that Congress intended the offense to match in "the generic sense" the way "the term is now used in the criminal codes of most States." *Id.* And, it concluded that "[a]lthough the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: *an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime*." *Id.* (emphasis added).

The Court stated that if the defendant was convicted of burglary in a state "where the generic definition has been adopted, with minor variations in terminology, then the trial court need find only that the state statute corresponds *in substance* to the generic meaning of burglary." *Id.* at 599 (emphasis added). Thus, the Court held that "an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if . . . its statutory definition *substantially corresponds* to 'generic' burglary." *Id.* at 602 (emphasis added).

It is against this backdrop that we consider Bonilla's appeal.

### B.

Texas Penal Code section 30.02(a) provides as follows:

A person commits an offense if, without the effective consent of the owner, the person:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Bonilla was convicted of violating section (a)(3) of the statute, which, Bonilla concedes, includes all of the *Taylor* elements—unlawful entry, of a building or other structure, and the requisite intent to commit a felony or other predicate crime.[4] Bonilla notes, however, and we agree, that section (a)(3) does not require that the intent exist at entry. According to Bonilla, this quirk as to the timing element is fatal under *Taylor*. With that, however, we cannot agree.

In adopting a generic definition of "burglary," *Taylor* repeatedly emphasized that a precise lining up of the elements is not required, but rather that "*the exact formulations vary*." 495 U.S. at 598 (emphasis added). And in offering guidance to courts as to how to apply the definition, *Taylor* added that "where the generic definition has been adopted, with minor variations in terminology, then the trial court need find only that the state statute corresponds *in substance* to the generic meaning of burglary." *Id.* at 599 (emphasis added).

---

[4]Under the modified categorical approach, *see generally Shepard v. United States*, 544 U.S. 13 (2005), we confirm, as did the district court, that Bonilla entered a habitation. Thus, the requirement that Bonilla was convicted of "burglary of a dwelling," thereby supporting the "crime of violence" sentencing enhancement, is satisfied. *See* U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii). Bonilla does not challenge this finding on appeal.

Because section (a)(3) requires an unlawful entry, of a building or habitation, and the separate intent to commit a felony, theft, or assault, we find that it corresponds "in substance" to *Taylor*'s generic definition of burglary. *See id.* As the government notes, "[b]ecause the Texas statute applies only where a defendant's entry or remaining in a building is unlawful, proof of a completed or attempted felony *necessarily* requires proof that the defendant formulated the intent to commit a crime either prior to his unlawful entry or while unlawfully remaining in the building." Appellee's Br. 7-8 (emphasis added).

We also agree with the government that while sections (a)(1) and (2) of the Texas statute cover, respectively, situations where it is clear that the intent "existed prior to the unlawful entry, such as when a defendant is caught with burglary tools," or where a defendant "lawfully enter[s] a store and then conceal[s] himself until after closing with intent to steal," section (a)(3) "fills a gap in the statutory scheme for cases in which it is unclear whether the necessary intent existed at the time of an unlawful entry or was formed subsequent[ly]." *Id.* 13-14. For example, "remaining in" cases could be charged under section (a)(3), "either because the state cannot prove when the defendant formed the intent to commit a subsequent felony or because there is insufficient proof that the defendant 'concealed' himself." *Id.* 14.

In arguing that section (a)(3) does not satisfy *Taylor* because it does not require intent at the moment of entry, Bonilla offers the example of a homeless person who unlawfully enters a home only to seek warmth, but while inside, forms an intent to steal property. Framing the subsequent theft as a "crime of opportunity," rather than one resulting from planning or plotting, Bonilla argues that the homeless man presents less of a risk than the person who enters a home after plotting to commit a crime.

That argument is flawed. *Taylor* does not distinguish between burglaries based on their comparative level of risk,

but rather is concerned with a defendant's (1) unlawful presence, (2) in a building or structure, (3) with the intent to commit a crime—all of which are required under section (a)(3). We therefore hold that Bonilla's conviction under Texas Penal Code section 30.02(a)(3) substantially corresponds to the elements of generic burglary as outlined in *Taylor* and therefore qualifies as a "crime of violence" for sentencing purposes.

## C.

The Fifth Circuit has held, and our dissenting colleague urges, that "a burglary conviction under § 30.02(a)(3) of the Texas Penal Code is not a generic burglary under the *Taylor* definition because it does not contain an element of intent to commit a felony, theft, or assault at the moment of entry." *United States v. Constante*, 544 F.3d 584, 587 (5th Cir. 2008) (per curiam). In support, the court noted that although section (a)(3) requires that a defendant intentionally or knowingly enter the building, "he would not have to intend to commit a felony . . . at that time" and "[o]nly this latter type of specific intent is relevant to the *Taylor* definition of generic burglary." *Id.* at 586 n.3.

With respect, we think this reading of *Taylor* too rigid, given that a defendant convicted under section (a)(3) necessarily developed the intent to commit the crime while remaining in the building, if he did not have it at the moment he entered. The critical question is whether section (a)(3) of the Texas statute "corresponds in substance to the generic meaning of burglary," *Taylor*, 495 U.S. at 599. Bonilla pleaded guilty to an offense under Texas law that required proof of (1) an unlawful entry, (2) into a building or habitation, and (3) the intent to commit a felony, theft, or assault. We hold that these elements satisfy *Taylor*'s description of generic burglary, notwithstanding that Bonilla might not have formulated his intent prior to the unlawful entry.

### III.

For the foregoing reasons, we affirm the district court's judgment.

*AFFIRMED*

TRAXLER, Chief Judge, dissenting:

Under *Taylor v. United States*, 495 U.S. 575 (1990), a prior conviction is a burglary conviction for sentence-enhancement purposes if the underlying offense, "regardless of its exact definition or label, ha[s] the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. While there are offenses under Texas law that meet this definition, the statute under which Bonilla was convicted does not contain the intent element required by *Taylor*. I therefore do not believe that Bonilla's prior conviction is a crime of violence under U.S.S.G. § 2L1.2, and I respectfully dissent from the affirmance of Bonilla's sentence.

### I.

### A.

The Sentencing Guidelines provide for a 16-level increase in the offense level if the defendant was deported after being convicted of a "crime of violence" that receives criminal history points. U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Guideline defines "crime of violence" to include "burglary of a dwelling," *id.* cmt. n.1(B)(iii), but it does not define "burglary."

In *Taylor*, the Supreme Court considered the scope of the similarly undefined reference to a prior conviction for burglary contained in 18 U.S.C. § 924(e). Although the Court recognized that burglary has a well-defined meaning at common law—"a breaking and entering of a dwelling at night,

with intent to commit a felony," *Taylor*, 495 U.S. at 592, the Court observed that the contemporary understanding of "burglary" had evolved far from its common-law roots and that "[t]he arcane distinctions embedded in the common-law definition have little relevance to modern law enforcement concerns," *id.* at 593. The Court thus rejected the argument that "burglary" as used in § 924(e) was common-law burglary, *see id.* at 594, and instead concluded that the statute referred to burglary in "the generic sense in which the term is now used in the criminal codes of most States," *id.* at 598. "Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.*

### B.

The Texas statute under which Bonilla was convicted provides that:

> A person commits an offense if, without the effective consent of the owner, the person:
>
> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
>
> (2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
>
> (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Tex. Penal Code Ann. § 30.02(a). As is apparent from the face of the statute, "with intent to commit a felony, theft, or assault" is an element of the offenses set out in § 30.02(a)(1) and § 30.02(a)(2). Bonilla, however, was charged with and

pleaded guilty to a violation of § 30.02(a)(3), which replaces the with-intent element with the requirement that the defendant committed or attempted to commit the specified crimes.

Bonilla argues on appeal that *Taylor*'s intent-to-commit-a-crime element requires *contemporaneous* intent — intent that accompanies or coincides with the commission of the other elements. Because § 30.02(a)(3) only requires that the defendant unlawfully enter and thereafter commit or attempt to commit a felony, the intent necessary for conviction under § 30.02(a)(3) need not have existed at the moment of entry. Bonilla thus contends that his conviction under § 30.02(a)(3) is not a conviction for generic burglary as defined by *Taylor*.

For its part, the government argues that § 30.02(a)(3) in substance prohibits the same conduct as generic burglary, which is all that *Taylor* requires. *See Taylor*, 495 U.S. at 602 ("[A]n offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if . . . its statutory definition *substantially corresponds* to 'generic' burglary. . . ." (emphasis added)). The government notes that because *Taylor* defines generic burglary to include offenses involving unlawful "remaining" on the premises, generic burglary necessarily encompasses offenses where the intent to commit a crime is formed while the defendant remained in the building. The government thus contends that, contrary to Bonilla's assertion, generic burglary does not require that the intent exist at the moment of entry. And because proof of the completed or attempted crime required by § 30.02(a)(3) necessarily shows that the defendant formulated the requisite intent either before entering the building or while he remained in the building, the government asserts that the crime set out in § 30.02(a)(3) substantially corresponds to generic burglary.

## II.

Before addressing the merits of the parties' arguments, I think it will be helpful to clarify the nature of the issue before

the court. Generic burglary as defined in *Taylor* is "a crime consisting of three necessary elements: 1) an unlawful or unprivileged entry or remaining in; 2) a building or other structure; 3) with intent to commit a crime." *United States v. Bowden*, 975 F.2d 1080, 1083 (4th Cir. 1992). The alternate phrasing of the first element means that generic burglary can be committed in two ways: by unlawfully entering a building or structure with intent to commit a crime, *or* by unlawfully remaining in a building or structure with intent to commit a crime. But whether the crime is committed by unlawfully entering or by unlawfully remaining, the intent to commit a crime remains a separate element. *See United States v. Ortega-Gonzaga*, 490 F.3d 393, 395 (5th Cir. 2007) (under *Taylor*'s definition of generic burglary, unlawful entry and intent to commit a crime are separate elements).

As noted above, the government's argument focuses primarily on *Taylor*'s inclusion of "remaining-in" offenses in the definition of generic burglary. This focus on the remaining-in language, however, obscures a critical point—remaining-in offenses are *not* included in the statute under which Bonilla was convicted. Section 30.02(a)(3) prohibits unlawful *entries*, not unlawful *remaining*. *See* Tex. Penal Code Ann. § 30.02(a)(3) ("A person commits an offense if, without the effective consent of the owner, the person . . . *enters* a building or habitation and commits or attempts to commit a felony, theft, or an assault." (emphasis added)). And in accordance with the terms of the statute, Bonilla was charged with and pleaded guilty to unlawful *entry* only; he was neither charged with nor convicted of unlawfully remaining.

When Bonilla's argument is considered in light of the *statute under which he was actually indicted and convicted*, it is clear that Bonilla does not contend that generic burglary *always* requires that the intent to commit a crime exist at the moment of entry. Instead, Bonilla argues that the intent required by *Taylor* must be contemporaneous with the prohibited act, whether that act is unlawful entry or unlawful remain-

ing.[1] Because he was charged with and convicted of unlawful entry under a statute that does not require the unlawful entry to be accompanied by an intent to commit a crime, Bonilla argues that he was not convicted of generic burglary.

It thus seems to me that the question to be answered here is not, as the government contends, whether the intent required for generic burglary must always and in every case exist at the moment of entry; *Taylor*'s inclusion of unlawful-remaining offenses makes it clear the answer to that question is "No." Instead, the question is whether a conviction under a statute proscribing unlawful entries without requiring contemporaneous intent amounts to a conviction for generic burglary. In my view, *Taylor* makes it clear that the answer to that question likewise is "No."

## A.

Although the *Taylor* Court had no need to elaborate on the point, there is no doubt that for an offense to constitute burglary at common law, the intent to commit a crime must have existed at the time of the breaking and entering. Contemporaneous intent was the essence of burglary at common law, as it was the element that distinguished the offense from trespass. *See* 3 Wayne R. LaFave, *Substantive Criminal Law* § 21.1(e) (2d. ed.) ("To have committed the offense of burglary at common law, one must have intended to commit a felony *while fulfilling the other requirements*." (emphasis added));[2] 4 William Blackstone, *Commentaries on the Laws*

---

[1]In fact, Bonilla acknowledges that if he had been *charged and convicted* under subsection (a)(2) of the Texas statute, which prohibits "remain[ing] concealed" with intent to commit a crime, *see* Tex. Penal Code Ann. § 30.02(a)(2), the conviction would be for generic burglary. *See* Brief of Appellant at 22; Reply Brief at 3.

[2]The Court in *Taylor* relied extensively on a criminal-law treatise co-authored by Professor LaFave and its discussion of burglary's evolution from its common-law roots to its modern statutory form. *See Taylor*, 495 U.S. at 580 n.3 (quoting W. LaFave & A. Scott, *Substantive Criminal Law* § 8.13 at 464 (1986)); *id.* at 588 n.4; *id.* at 593; *id.* at 598.

*of England* (1769) ("As to the *intent*; it is clear, that breaking and entry must be with a felonious intent, *otherwise it is only a trespass*." (second emphasis added)).

In my view, generic burglary as defined by *Taylor* retains the common-law requirement of contemporaneous intent. This conclusion is compelled by the plain language of the intent requirement itself — "*with* intent to commit a crime" can only be understood as requiring the intent to accompany the other elements. *See Webster's Encyclopedic Unabridged Dictionary of the English Language* at 2183 (2001) (defining "with" as "accompanied by; accompanying"); *cf. Harris v. State*, 20 Tex. App. 652, 1886 WL 4656 at *3 (Tex. Ct. App. 1886) ("[T]o constitute burglary . . . , the party must enter the house with intent to commit theft. *This intent must accompany — prompt—the entering*." (emphasis added)). The Court's with-intent-to-commit phrasing of the element mirrors the typical phrasing at common law, and I do not believe the Court could have been unaware of the significance of its chosen language.

Moreover, the *Taylor* Court noted that its formulation of generic burglary "approximates that adopted by the drafters of the Model Penal Code." *Taylor*, 495 U.S. at 598 n.8. And as defined by the Model Penal Code, burglary requires contemporaneous intent. *See Model Penal Code* § 221.1 (1980) ("A person is guilty of burglary if he *enters* a building or occupied structure, or separately secured or occupied portion thereof, *with purpose to commit a crime therein*, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." (emphasis added)).

The *Taylor* Court fashioned its definition of generic burglary to reflect the modern, prevailing view of the crime. *See Taylor*, 495 U.S. at 598. There is little doubt that a defendant's intent to commit a crime remains central to the modern offense. *See, e.g.*, *State v. Chatelain*, 220 P.3d 41, 45 (Or. 2009) ("Since the time of Blackstone, the defendant's intent

to commit a crime in the building has been the characteristic distinguishing burglary from mere trespass. And, under current Oregon law, intent to commit a crime is required to commit any degree of burglary; it continues to be the primary element distinguishing burglary from criminal trespass." (citation omitted)); *People v. Maggette*, 747 N.E.2d 339, 349 (Ill. 2001) ("The gist of the offense is the defendant's felonious intent with which he or she enters the dwelling . . . ."); *Keady v. State*, 687 S.W.2d 757, 760 (Tex. Crim. App. 1985) ("The conduct that is the gist of the offense of burglary is the entry with the requisite intent, not the physical act of entering.").

"Unlawful remaining" was not a basis for a burglary conviction at common law,[3] but I find nothing in *Taylor*'s analysis to suggest that the inclusion of remaining-in offenses eliminated or fundamentally altered the contemporaneous-intent requirement. Instead, it seems to me that the inclusion of remaining-in offenses simply means that if a defendant is charged with unlawful remaining, the intent must exist at the time of the unlawful remaining. *See United States v. Herrera-Montes*, 490 F.3d 390, 392 (5th Cir. 2007) ("*Taylor* requires that the defendant intend to commit a crime at the time of unlawful entry or remaining in, as do the *Model Penal Code* § 221.1 and *Black's Law Dictionary* 197-98 (6th ed. 1990)."); *see also* 3 LaFave, *Substantive Criminal Law* § 21.1(b) (under a statute prohibiting unlawful remaining, "the requisite intent

---

[3]Burglary at common law required a "breaking" and an entry. Most states now have eliminated the breaking requirement, and most have placed qualifiers (*e.g.*, unlawful, unprivileged) on the type of entry required. *See* 3 LaFave, *Substantive Criminal Law* § 21.1(b). While many states still limit burglary to unlawful entries, it is now "far more common" for states to define burglary to include unlawful entry or unlawful remaining in the premises, *id.*, which permits burglary convictions in cases where the initial entry may have been lawful. *See id.* ("This common statutory expansion in the definition of burglary makes great sense. A lawful entry does not foreclose the kind of intrusion burglary is designed to reach, as is illustrated by the case of a bank customer who hides in the bank until it closes and then takes the bank's money.").

to commit a crime within need only exist at the time the defendant unlawfully remained within"); *Hernandez v. State*, 190 S.W.3d 856, 863 (Tex. App. 2006) ("If a defendant is charged with burglary under [Tex. Penal. Code § 30.02] (a)(1) or (a)(2), the State is required to prove the defendant's intent to commit a felony or theft *at the time the defendant entered or remained concealed* in a habitation or building." (emphasis added)); *Pushruk v. State*, 780 P.2d 1044, 1048 (Alaska Ct. App. 1989) ("[T]o find a defendant guilty of burglary, the state must show the defendant had the intent to commit an additional crime at the time his presence on the premises first became unlawful, *i.e.*, at the time that he first trespassed, entered or remained unlawfully on the premises.")

Accordingly, I believe that under *Taylor*'s definition of generic burglary, a defendant's intent to commit a crime must exist contemporaneously with the unlawful entry or the unlawful remaining.

### B.

Bonilla was charged with and pleaded guilty to entering a dwelling without consent of the owner and committing a theft in the dwelling, in violation of Texas Penal Code § 30.02(a)(3). Intent to commit a crime is a necessary element of generic burglary, *see Taylor*, 495 U.S. at 599, but "'intent to commit a felony or theft' is not an element of the offense proscribed by § 30.02(a)(3)," *DeVaughn v. State*, 749 S.W.2d 62, 65 n.4 (Tex. Crim. App. 1988) (en banc). It thus seems clear to me Bonilla was not convicted of generic burglary as defined by *Taylor*. *See United States v. Constante*, 544 F.3d 584, 587 (5th Cir. 2008) (per curiam) ("[A] burglary conviction under § 30.02(a)(3) of the Texas Penal Code is not a generic burglary under the *Taylor* definition because it does not contain an element of intent to commit a felony, theft, or assault at the moment of entry.").

The government, of course, argues that § 30.02(a)(3)'s attempted-or-committed-crime element substantially corre-

sponds to generic burglary's intent element because generic burglary can be committed by unlawfully remaining, and "the fact of attempted or completed theft 'necessarily implies' that such intent was formed while the Defendant unlawfully remained in the premises." Brief of Respondent at 13. *Taylor*'s determination that generic burglary encompasses offenses involving unlawful entry *and* offenses involving unlawful remaining, however, does not give this court license to read unlawful remaining into a burglary statute that only prohibits unlawful entry. Bonilla was charged and convicted of unlawful entry, the only act proscribed by § 30.02(a)(3). The commission of a crime after entry might establish that the defendant formed the intent to commit the crime while he remained on the premises, but it does not establish that the intent was contemporaneous with the unlawful entry. *See DeVaughn*, 749 S.W.2d at 65 (§ 30.02(a)(3) "includes as burglary the conduct of one who enters without effective consent *but, lacking intent to commit any crime upon his entry, subsequently forms that intent* and commits or attempts a felony or theft" (emphasis added; internal quotation marks omitted)).

The government's argument, in essence, is that Bonilla's conduct *could have* supported a conviction under a remaining-in statute. Under *Taylor*'s categorical approach, however, we must focus on the elements of the underlying offense of conviction, not the conduct that led to the conviction. *See Taylor*, 495 U.S. at 600. That is, whether Bonilla was convicted of generic burglary is a determination to be made "not by comparing the defendant's prior *conduct* with the generic offense, but rather by comparing the *elements* of the crime of conviction with the generic offense." *United States v. Peterson*, 629 F.3d 432, 436 (4th Cir. 2011) (emphasis added). Bonilla was charged and convicted of violating § 30.02(a)(3), which proscribes unlawful entries but does not require the entry to be accompanied by an intent to commit a crime. *See DeVaughn*, 749 S.W.2d at 65. The *elements* of § 30.02(a)(3) thus do not substantially correspond to the *elements* of generic burglary, *see Constante*, 544 F.3d at 587, and Bonilla's conviction

should not have been used to enhance his sentence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

Accordingly, I respectfully dissent from the judgment affirming Bonilla's sentence.